STATE of Wisconsin, Plaintiff-Appellant and Cross-Respondent,

v.

James GRAWIEN, Defendant-Respondent and Cross-Appellant.†

Court of Appeals

*No. 84–416–CR. Submitted on briefs January 31, 1985.—Decided March 7, 1985.*
(Also reported in 367 N.W.2d 816.)

† Petition to review denied.

For the plaintiff-appellant and cross-respondent, the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

For the defendant-respondent and cross-appellant, the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   The State of Wisconsin appeals an order of the trial court granting the suppression of certain evidence.[1]   The respondent, James Grawien, cross-appeals an order of the trial court denying the suppression of other evidence.

James Grawien was charged with the unlawful possession of a controlled substance with intent to deliver pursuant to sec. 161.41(1m)(b), Stats.  Prior to the issuance of the complaint, Court Commissioner William D. Engler, Jr. issued a search warrant authorizing the search of Grawien's house and adjoining property for marijuana and other controlled substance related materials.  The search warrant was supported by the affidavit of Daniel G. Hughes, an agent for the Wisconsin Department of Justice.  Hughes recited that the Manitowoc County Sheriff's Department had received an anonymous letter stating that marijuana was being grown and cultivated on Grawien's property and that an aerial surveillance had revealed the presence of a patch of suspected marijuana growing on Grawien's property.

At a motion to suppress the evidence seized pursuant to the search warrant, the state conceded that Commis-

---

[1] This appeal is pursuant to the provisions of sec. 974.05(1)(a), Stats., permitting review of a final order or judgment adverse to the state made before jeopardy has attached.

sioner Engler was not authorized to issue search warrants pursuant to sec. 757.69(1), Stats. The state requested an opportunity to make an offer of proof to demonstrate the good faith of the police authorities in procuring the warrant from Commissioner Engler. The trial court denied the request to make the offer of proof and granted the motion to suppress.

At the time of its decision, the trial court did not have the benefit of the recent United States Supreme Court decision of *United States v. Leon,* 468 U.S. ——, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). *Leon* adopts a "good faith" exception to the exclusionary rule under the Fourth Amendment of the United States Constitution. The state asks that we do the same.

The state's request, however, flies in the face of the controlling case law of the Wisconsin Supreme Court. The application of the exclusionary rule in Wisconsin is one that is firmly rooted in our jurisprudence (*see Hoyer v. State,* 180 Wis. 407, 193 N.W. 89 (1923)), and one that long predates the landmark case of *Mapp v. Ohio,* 367 U.S. 643 (1961), which made the exclusionary rule binding upon the states. In addition, the Wisconsin Supreme Court recognized in *State v. Kriegbaum,* 194 Wis. 229, 215 N.W. 896 (1927), that the receipt into evidence of the fruits of a search warrant issued by one having no such authority violates a right under the Wisconsin Constitution to be free from unreasonable searches and seizures. *Kriegbaum* holds:

The legislature having granted no power to a justice of the peace to issue a warrant for the search of a person, the conclusion follows that the liquor in question was received in evidence *in violation of art. I, sec. 11, of the constitution of Wisconsin, which guarantees to the defendant immunity from unreasonable searches and seizures.* A search made pursuant to warrant issued by a justice of the peace to whom the legislature had not

granted the power to issue such a warrant *is an unreasonable search and in violation of the defendant's constitutional rights under this section of that fundamental law.* [Emphasis added.]

*Id.* at 232, 215 N.W. at 897–98.

The state effectively seeks the overruling of *Hoyer,* its progeny and the *Kriegbaum* case. This is neither our function nor our privilege.

■

The Wisconsin Court of Appeals serves the primary "error-correcting" function in our two-tiered appellate system. *See State v. Mosley,* 102 Wis. 2d 636, 665–66, 307 N.W.2d 200, 216–17 (1981). The Wisconsin Supreme Court, unlike the court of appeals, has been designated by the constitution and the legislature as a law-declaring court. *See State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 230, 340 N.W.2d 460, 465 (1983). While the court of appeals also serves a law-declaring function, such pronouncements should not occur in cases of great moment.[2] This is such a case.

■

The supreme court has previously wrestled with certain reservations concerning the wisdom of the exclusionary rule and its retention. *See Conrad v. State,* 63 Wis. 2d 616, 636–39, 218 N.W.2d 252, 262–64 (1974); *id.* at 640–43, 218 N.W.2d at 264–66 (Wilkie, J., concurring). Our supreme court has acknowledged that a United States Supreme Court decision relieving the states of the exclusionary rule would additionally require overruling *Hoyer. Id.* at 637–38, 218 N.W.2d at 263.

In light of these considerations, a court of appeals decision which effectively overrules a controlling decision of the Wisconsin Supreme Court is *patently* erroneous and usurpative.

---

[2] With these principles in mind, we certified this case to the Wisconsin Supreme Court. Certification, however, was denied on January 28, 1985.

We therefore affirm the order of the trial court suppressing the evidence seized pursuant to the search warrant.[3]

Grawien cross-appeals an order of the trial court denying a motion to suppress evidence obtained as a result of aerial surveillance of his property.[4]

On September 15, 1983, Detective Larry Conrad received an anonymous letter from an individual who stated that marijuana was possibly being grown on Grawien's property. Detective Conrad contacted the Wisconsin Department of Justice, and aerial surveillance was planned. On September 21, 1983, agent Daniel G. Hughes and his pilot made three passes over Grawien's property at various altitudes. Twenty photographs were taken of the area. Hughes observed a patch of suspected marijuana approximately twenty feet by twenty-five feet behind and to the south of the Grawien residence.

The trial court found this marijuana patch to be approximately twenty-five by twenty-five feet, "although not necessarily square." The patch was located approximately 100 to 150 feet from the rear of the Grawien residence. Adjacent to the southwest corner of the mari-

---

[3] We acknowledge that the cases of *State v. Verkuylen*, 120 Wis. 2d 59, 352 N.W.2d 668 (Ct. App. 1984), and *State v. Loney*, 110 Wis. 2d 256, 328 N.W.2d 872 (Ct. App. 1982), are facially in conflict on the question of whether evidence obtained pursuant to a search warrant issued by a court commissioner without the requisite statutory authority should be suppressed. We conclude *Loney* is the correct decision because it properly defers to the Wisconsin Supreme Court decisions on this question.

[4] We do not deem Grawien's cross-appeal to be an appeal as a matter of right simply because it "coat-tails" the state's appeal under sec. 974.05, Stats. We therefore treat Grawien's notice of cross-appeal as a petition for leave to appeal a nonfinal order. Since the state does not raise the issue of Grawien's right to appeal and since our consideration of the cross-appeal appears to be in the interest of judicial economy, we grant the petition and address the cross-appeal on its merits.

juana patch was a pumpkin patch and to the immediate west thereof another area described by one witness as a vegetable garden. The marijuana patch was separated from the rear of the Grawien residence by a hill or terrace and an abundance of wild vegetation. This area did not appear to be extensively manicured or cared for although some of the grass was cut shorter than the surrounding weeds. Some type of conduit or hosing extended from the garden area towards the residence. The trial court further found that weeds and other vegetation were growing on the east and northern sides of the patch. This vegetation also extended somewhat to the westerly side. A cornfield was located approximately fifteen to twenty feet south of the marijuana patch.

The trial court found that the marijuana patch was not viewable from adjoining areas with the exception of the cornfield to the south. Specifically, the trial court found that the patch was not visible from County Highway XX on the north and Cedar Lake Road on the east. The front of the Grawien residence was to the north, which would be the normal path for visitors coming upon the property. Nor was the patch visible from the yard areas to the west and south of the residence until a point approximately twenty feet north of the marijuana patch. The patch was concealed in part by the weeds and other vegetation growing on the east and northern sides and partially on the west side.

However, because the area was visible from the cornfield to the south, the trial court concluded that "the defendant did not have in this curtilage a reasonable expectation of privacy." The trial court further found the ensuing air surveillance to have been conducted in a reasonable manner. The trial court, therefore, concluded that Grawien's fourth amendment rights were not violated by the surveillance, and the motion to suppress was denied.

We first observe that this is not an "open fields" case.[5] Instead, the trial court found that the marijuana patch in question was part of the curtilage of the Grawien property. The state concedes a sufficient factual basis exists in the record to support the trial court's ruling on this question.

In *Conrad v. State*, 63 Wis. 2d 616, 218 N.W.2d 252 (1974), our supreme court noted that under the strict or ancient curtilage test, the subjective element of a reasonable expectation of privacy was omitted and that there was, in effect, a legal presumption that all within the curtilage was protected. *Id.* at 630, 218 N.W.2d at 259. After consideration of the case of *Katz v. United States*, 389 U.S. 347 (1967), and *Wattenburg v. United States*, 388 F.2d 853 (9th Cir. 1968), the *Conrad* court concluded that:

Under the subjective test, it *now* appears that one who places "papers and effects" within the curtilage in an area open to the public will not be protected against a search and seizure unless the circumstances spell out a subjective and reasonable expectation of privacy despite

---

[5] The law in Wisconsin with respect to "open field" searches in areas away from the curtilage is that officers may search such areas above or below the ground undeterred by the fourth amendment and without a warrant. *Conrad v. State*, 63 Wis. 2d 616, 633, 218 N.W.2d 252, 261 (1974).

The Wisconsin Supreme Court in *Conrad* rejected the contention that *Katz v. United States*, 389 U.S. 347 (1967), sounded the death knell for the "open fields" doctrine by its language that the fourth amendment protected people and not places. As the *Conrad* court noted:

The importance of *Katz* is not that it spreads the umbrella of the fourth amendment to a telephone booth, but that it foretold the possibility that, even in a place traditionally thought to be an area protected by the fourth amendment, protection would not be afforded in the absence of a subjective intent to exercise a reasonable expectation of privacy.

*Conrad* at 627, 218 N.W.2d at 258.

the semipublic nature of the area within the curtilage. [Emphasis added.]

*Id.* at 630, 218 N.W.2d at 259.

The law in Wisconsin with respect to curtilage now holds that where there is reasonable expectation of privacy, there can be no search except upon warrant issued on probable cause. *Id.* at 634, 218 N.W.2d at 261. However, where the evidence is in plain sight within the curtilage or where there is some subjective showing of waiver, the necessity for a warrant is obviated. *Id.* Upon this test then, we must determine the effect, if any, of the ability to view the Grawien marijuana patch from the adjoining cornfield.

This requires consideration of the language of *Conrad* which holds that items "within the curtilage *in an area open to the public* will not be protected against a search and seizure unless the circumstances spell out a subjective and reasonable expectation of privacy despite the *semipublic* nature of the area within the curtilage." *Id.* at 630, 218 N.W.2d at 259. (Emphasis added.) Grawien relies on this language and its repeat by way of dictum in *State v. Verhagen,* 86 Wis. 2d 262, 269–70, 272 N.W.2d 105, 108 (Ct. App. 1978), for his argument that the area in question was neither "open to the public" nor "semipublic" in nature.

We are not bound by the *Verhagen* language because it was dicta and was not necessary to the opinion in that case. *Conrad* properly links concepts of public or semipublic with considerations of plain view or subjective waiver of a reasonable expectation of privacy. The emphasis on the inquiry, therefore, is not the ability of third parties to gain access to or view the property but rather the manner in which the possesser holds the prop-

erty out to the public. This test properly places the focus of the inquiry not on the state's airborne activities but rather on the citizen's earthbound ones. Moreover, it allows the citizen an opportunity to demonstrate his expectations of privacy by the manner in which he veils or conceals his property from others. By taking the appropriate *reasonable* steps exhibiting this subjective expectation of privacy, the citizen holds it within his own power to determine whether government intrusions into areas of his curtilage violate fundamental rights.

The undisputed fact in this case is that the marijuana patch was easily viewed from an adjoining cornfield. Under such circumstances, cases from other jurisdictions have held such observations do not constitute searches.[6] These cases essentially adopt the reasoning of Professor W. LaFave at 1 *Search and Seizure,* § 2.3(g) at 326 (1978) :

Certainly no justified expectation [of privacy] is present when the physical facts are such that the incriminating objects or activities were readily visible to persons on neighboring lands. [Footnote omitted.]

Grawien's reliance on *People v. Cook,* 199 Cal. Rptr. 204 (Ct. App. 1984), is misplaced since Cook had constructed a private enclave screened from public view by high fences and tall trees. Here, the evidence does not indicate that any of the foliage which served to partially conceal the marijuana patch was planted by Grawien or, if so, was cultivated by him for that purpose. Even if he

[6] *See State v. Dupuis,* 378 So. 2d 934, 937 (La. 1979), *cert. denied,* 446 U.S. 993 and 449 U.S. 828 (1980) ; *State v. Pontier,* 518 P.2d 969, 973–74 (Idaho 1974) ; *United States v. McMillon,* 350 F. Supp. 593, 596 (D. D.C. 1972) ; *United States v. Campbell,* 395 F.2d 848 (4th Cir.), *cert. denied,* 393 U.S. 834 (1968).

did so, the area could still be viewed from the cornfield to the south.

Grawien's reliance on *People v. Agee,* 200 Cal. Rptr. 827 (Ct. App. 1984), is similarly misplaced. *Agee* also presented a case in which the owner had erected barriers to prevent a view from adjoining vantage points. Again, no such evidence exists in this case. Moreover, *Agee* concerned a random aerial surveillance case in which the state asserted an unlimited surveillance right of residential property from the air.[7] Such a right was found not to exist in California. Since we have concluded that Grawien's actions do not demonstrate a reasonable expectation of privacy, we are not required to address the permissible limits of aerial surveillance in Wisconsin.

In this case, we agree with the trial court that Grawien's display of the marijuana patch in such a fashion so as to permit its view from adjoining property does not demonstrate an actual or subjective reasonable expectation of privacy. Therefore, we affirm the trial court's order denying suppression of the evidence resulting from the aerial surveillance.

*By the Court.*—Orders affirmed.

---

[7] We acknowledge that the anonymous letter, in and of itself, does not constitute probable cause to search. However, it does serve to distinguish the *Agee* case which involved a totally random surveillance.