## STATE of Wisconsin, Plaintiff-Appellant,

v.

## James Beryl BRADY, Defendant-Respondent.

Supreme Court

*No. 84–1886–CR. Argued October 29, 1985.—Decided June 4, 1986.*

(Also reported in 388 N.W.2d 151.)

For the plaintiff-appellant the cause was argued by *David J. Becker,* assistant attorney general, with

whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-respondent there were briefs and oral argument by *Robert D. Junig, Sr.,* Beloit.

Amicus curiae brief was filed by *Christine M. Wiseman,* Milwaukee, for Wisconsin Civil Liberties Union Foundation, Inc.

WILLIAM G. CALLOW, J.   This case arises from a John Doe investigation into fund-raising activities in Rock county. Judge Edwin C. Dahlberg, the presiding judge at the John Doe proceeding, issued a material witness arrest warrant for James Beryl Brady. Brady was arrested pursuant to the warrant and consented to a search of his premises. After being warned of his *Miranda* rights, he voluntarily made allegedly inculpatory statements. The state then charged Brady with theft by fraud, contrary to sec. 943.20(1)(d), Stats., based upon the evidence discovered immediately after the arrest.

Brady moved the circuit court for Rock county, Judge J. Richard Long, to suppress the evidence discovered after the arrest. He asserted that his arrest was illegal because the John Doe judge lacked authority to issue a material witness arrest warrant. The circuit court agreed that a John Doe judge lacks authority to issue material witness arrest warrants under sec. 969.01(3), Stats. Although Brady consented to the search and voluntarily made his statement, the circuit court ruled that the evidence had to be suppressed because it was the fruit of an illegal arrest, an arrest pursuant to an invalid material witness arrest warrant. *See Taylor v. Alabama,* 457 U.S. 687 (1982). The court of appeals affirmed the circuit court order. *State v. Brady,* 118 Wis. 2d 154, 345 N.W.2d 533 (Ct. App. 1984). We denied the state's petition for review.

445

After our denial of the state's petition for review, the Supreme Court handed down its decision in *United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405 (1984). In *Leon* the Supreme Court adopted a good-faith exception to the exclusionary rule. Based on the Supreme Court's recognition of a good-faith exception to the exclusionary rule, the state asked the circuit court to reconsider its suppression order, arguing that Brady was arrested in good-faith reliance on the material witness arrest warrant. The circuit court refused to consider whether the good-faith exception should apply to Brady's arrest, however, because it concluded that the court of appeals' affirmance of the suppression order established the suppression order as the law of the case. The state appealed the circuit court's order denying its motion for reconsideration. We accepted this case on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats.

■ A material witness arrest warrant cannot be issued in violation of the fourth amendment's prohibition against unreasonable searches and seizures. *See Bacon v. United States,* 449 F.2d 933, 942–43 (9th Cir. 1971). A material witness arrest warrant is invalid if it is not based on probable cause. Before we reach the issue of whether the material witness arrest warrant was valid, however, we must decide whether the law of the case doctrine precludes the circuit court from reconsidering the suppression order that the court of appeals affirmed.

■ The state acknowledges that the law of the case doctrine generally restrains a circuit court from reconsidering an order that an appellate court has affirmed.

446

"[A] decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." 1B *Moore's Federal Practice* par. 0.404[1] at 117 (2d ed. 1984).

The state makes two arguments to support its assertion that the law of the case doctrine should not preclude reconsideration in these circumstances. First, the state argues that the issue upon which it seeks reconsideration, adoption of a good-faith exception, was not decided in the prior appeal. Second, it contends that the change in the law manifested in *Leon* comes within an exception to the general rule restricting reconsideration.

Brady maintains that the suppression order is the law of the case because of the court of appeals' affirmance. He argues that the circuit court is prohibited from modifying or reviewing the suppression order in any respect. Granting that a circuit court may have the power to reconsider a prior order in some circumstances, Brady argues that the court is not obliged to do so and did not abuse its discretion in refusing to reconsider its suppression order in this case.

In *McGovern v. Eckhart*, 200 Wis. 64, 227 N.W. 300 (1929), we departed from our tradition of rigid adherence to the law of the case doctrine and held that we could reconsider a prior ruling in a case "whenever cogent, substantial, and proper reasons exist." *Id.* at 78. "[I]t is within the power of the courts to disregard the rule of 'law of the case' in the interests of justice." *Id.* at 75. The *McGovern* case, however, did not speak expressly to the issue of a circuit court's authority to reconsider a decision that an appellate court had affirmed at an earlier stage in the proceedings. Nonetheless, two of the reasons for allowing an appel-

late court to reconsider its earlier decision in a case apply with equal force to allow a circuit court to reconsider its decision even after an appellate court has affirmed the decision:

> "[A] decision of a legal issue or issues by an appellate court establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, [or] controlling authority has since made a contrary decision of the law applicable to such issues." *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir. 1967).

■ To conclude that a circuit court has the authority, in some circumstances, to reconsider an order affirmed by an appellate court does not compel the conclusion that the circuit court must reconsider such an order whenever those circumstances arise. Because the law of the case is a question of court practice, and not an inexorable rule, *McGovern,* 200 Wis. 2d at 75–76, it requires the exercise of judicial discretion. While the circuit court may have acted within its discretion in denying the state's motion for reconsideration in this case, however, it is within our discretion, now that the case is before us, to review any issues of law which the case presents. We declined to review the issues on the merits during the initial appeal of the nonfinal suppression order. Subsequently, the Supreme Court issued its decision in *Leon* in which it created a good-faith exception to the exclusionary rule. The court of appeals certified this case to us in light of the *Leon* decision. Accordingly, we choose to exercise our authority to review the propriety of the circuit court's suppression order.

Having concluded that the law of the case doctrine does not preclude reconsideration of the suppression order, we turn our attention to the validity of the material witness arrest warrant. Judge Dahlberg issued the material witness arrest warrant under sec. 969.01(3), Stats., which authorizes the issuance of such warrants only in felony criminal proceedings. Section 969.01(3) states as follows: "If it appears by affidavit that the testimony of a person is material in any felony criminal proceeding and that it may *become impracticable to secure his presence by subpoena,* the judge may require such person to give bail for his appearance as a witness." (Emphasis added.)

The circuit court concluded that the arrest warrant was invalid and ordered the suppression of any evidence which resulted from the arrest because the court believed that a John Doe proceeding does not fit within the definition of a felony criminal proceeding. The court equated a "criminal proceeding" to a "criminal action." Relying upon sec. 968.02(2), Stats., which provides that a criminal action commences with the filing of a criminal complaint, the court concluded that a John Doe proceeding is not a "criminal proceeding" because it is not commenced by a formal complaint. The court of appeals affirmed, holding that a John Doe proceeding is not a "felony" criminal proceeding because the classification of any alleged criminal conduct is not resolved until a complaint is filed.

The state maintains that the material witness arrest warrant was valid. The state argues that Judge Dahlberg had authority to issue a warrant under sec. 969.01(3), Stats., because this John Doe proceeding was a felony criminal proceeding. Even if sec. 969.01(3) were construed not to enable a judge in a John Doe pro-

449

ceeding to issue such warrants, the state asserts that a John Doe judge has inherent authority to issue material witness arrest warrants.

Brady argues that the material witness arrest warrant was invalid. He contends that a John Doe judge does not have authority to issue such warrants under sec. 969.01(3), Stats., because a John Doe proceeding is not a felony criminal proceeding. Moreover, Brady asserts that, whether the judge issued the material witness arrest warrant under the statute or by virtue of his inherent authority, the warrant must be deemed invalid because the state did not show that it was unable to obtain Brady's presence by subpoena.

Were we to accept the state's argument and hold that a John Doe judge has either the statutory authority or the inherent authority to issue material witness arrest warrants, our resolution of that question would not be dispositive. Regardless of which authority Judge Dahlberg relied upon in issuing Brady's material witness arrest warrant, this case turns on a more fundamental question—whether the warrant was issued in conformity with the fourth amendment's requirement of probable cause.

A material witness arrest warrant cannot be issued in violation of the fourth amendment's prohibition against unreasonable searches and seizures. *See Bacon v. United States,* 449 F.2d at 942–43. The fourth amendment requires probable cause for an arrest. "Before a material witness arrest warrant may issue, the judicial officer must have probable cause to believe (1) 'that the testimony of a person is material' and (2) 'that it may become impracticable to secure his presence by subpoena.' " *Id.* at 943. *See Barry v. United States ex rel.*

*Cunningham,* 279 U.S. 597, 617–18 (1929) [quoting *Crosby v. Potts,* 8 Ga. App. 463, 468, 69 S.E. 582 (1910)]. *See also* sec. 969.01(3), Stats.

Judge Dahlberg issued the material witness arrest warrant in reliance upon an affidavit prepared by Captain Pittner of the City of Beloit Police Department.[1]

---

[1] The affidavit of Captain Pittner states as follows:

"I, Truett Pittner, being first duly sworn, on oath deposes and states as follows:

"1. That I am Captain of detectives for the City of Beloit Police Department and have been a police officer for the City of Beloit Police Department for approximately fifteen (15) years and that I have total police experience of approximately eighteen (18) years; that your affiant has been conducting an investigation into a solicitation scheme that is being conducted in Beloit, Rock County, Wisconsin, and that in connection with that scheme, he talked with a subject who identified himself as James Brady and Brady informed him that he was the promoter of this scheme and that he was from Morgantown, West Virginia and that he has been in the City of Beloit for only eight (8) days and that he had retained Linda Hurley, amongst others, to operate telephone banks to solicit funds within the greater Beloit community and that this was done under the guise of being a charitable contribution for the Kiwanis Club of Greater Beloit and that he expected to net $27,465.00 and of that amount approximately $4,000.00 would go to the Kiwanis Club and that the remainder would go to Linda Hurley and her telephone solicitors, himself and to the show that is to be put on and attended by handicapped children; Brady further stated that Linda Hurley gets 15% of the solicitations she takes in and that he gets 35% for his promoter[']s fees and the remainder is split as previously mentioned; that your affiant talked to Brady on May 19, 1982; and Brady further stated that he does not go out and actively solicit various organizations to give handicapped children tickets to the show that is being arranged but if any organization contacts him that does represent handicapped children, he would give them tickets;

"2. That your affiant has a copy of the sales pitch used in this

While the affidavit does offer a basis upon which Judge Dahlberg could have found probable cause that Brady's testimony would be material to the John Doe proceeding, it does not offer a basis upon which Judge Dahlberg could have found probable cause that it would be impracticable to secure Brady's presence by subpoena.

The affidavit contains nothing resembling an affirmative assertion that the police had tried to obtain Brady's presence by subpoena or that the police had reason to believe that obtaining his presence by subpoena would be impracticable. The affidavit indicates that Brady is from West Virginia and had been in Beloit for only eight days, but that in itself is not a sufficient basis for the judge to find that Brady was likely to leave the state or unlikely to respond to a subpoena, especially when the affidavit also indicates that Brady was entirely cooperative when Captain Pittner talked with him two days prior to the issuance of the material witness arrest warrant. Notably, the material witness arrest warrant itself states that Judge Dahlberg found probable cause only with regard to Brady's status as a material witness.

---

game and the sales pitch stresses that the money donated is for tickets for handicapped children;

"3. That your affiant spoke with a citizen informant who identified herself to him and this citizen informant told him that she was contacted by a solicitor in this game and that the solicitor informed her, amongst other things, that this solicitation originally started as a solicitation for the Kiwanis Club of Greater Beloit and that she ask[ed] the solicitor if this was in any way affiliated with the Beloit Police Department and received a yes answer to that;

"4. That your affiant has seen the automobile driven by the aforementioned Brady and that this automobile bears license plates from West Virginia."

452

Because the affidavit did not offer a basis to find probable cause that securing Brady's presence through a subpoena would be impracticable, the material witness arrest warrant which Judge Dahlberg issued in reliance upon the affidavit was invalid. Because the arrest warrant was invalid, Brady's arrest violated the fourth amendment prohibition against unreasonable searches and seizures. The circuit court acted properly in suppressing the evidence obtained as a result of the illegal arrest.

Relying upon the Supreme Court's decision in *United States v. Leon, supra,* however, the state argues that even if the arrest was illegal, suppression of the evidence is an inappropriate remedy because the officers acted in good-faith reliance upon the material witness arrest warrant in arresting Brady. *Leon* created a good-faith exception to the exclusionary rule. The exception applies in situations in which the exclusion of evidence would not promote the exclusionary rule's purpose, which is to deter police conduct in violation of the fourth amendment. 104 S. Ct. at 3412–22. The state urges us to adopt *Leon* and to overrule our holding in *Hoyer v. State,* 180 Wis. 407, 193 N.W. 89 (1923), in which we adopted an exclusionary rule based upon the Wisconsin Constitution. Brady contends that this case is inappropriate for consideration of a good-faith exception to the exclusionary rule because the record does not support a finding that the police acted in good faith. Relying upon our decision in *Conrad v. State,* 63 Wis. 2d 616, 218 N.W.2d 252 (1974), however, Brady further argues that because the legislature has sanctioned the exclusionary rule, *see* sec. 971.31, Stats.,

only the legislature can repeal or change the exclusionary rule. *Conrad,* 63 Wis. 2d at 637.

■

We conclude that this case is not a proper vehicle for deciding whether to adopt a good-faith exception to the exclusionary rule. In *Leon* the Supreme Court expressly acknowledged that an officer would not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Leon,* 104 S. Ct. at 3422 [quoting *Brown v. Illinois,* 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)]. The fourth amendment requires that the affidavit upon which the warrant was based had to contain sufficient facts to support a finding of probable cause regarding the impracticability of securing Brady's presence through a subpoena. Because the affidavit lacked indicia of probable cause regarding the impracticability of securing Brady's presence through a subpoena, this case does not present a question of "good faith." Therefore, *Leon* is not implicated. Accordingly, we do not decide whether to adopt a good-faith exception to the exclusionary rule in Wisconsin. We hold that the circuit court acted properly in suppressing the evidence discovered as a result of the illegal arrest of Brady.

*By the Court.*—The order of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* This case comes before this court on certification from the court of appeals to settle a conflict in published opinions of the court of appeals regarding the adoption, for the purposes of the Wisconsin Constitu-

tion, of the good faith exception to the exclusionary rule announced in *United States v. Leon,* 104 S. Ct. 3405 (1984). *See State v. Collins,* 122 Wis. 2d 320, 327, 363 N.W.2d 229 (Ct. App. 1984), adopting a good faith exception to the exclusionary rule, and *State v. Grawien,* 123 Wis. 2d 428, 367 N.W.2d 816 (Ct. App. 1985), refusing to adopt the good faith exception.

Because the Wisconsin exclusionary rule is "based upon the Wisconsin Constitution," majority opinion at page 453, independent of an exclusionary rule imposed on the states by the federal Constitution, *Hoyer v. State,* 180 Wis. 407, 415, 193 N.W. 89 (1923), the parties agree that absent our adopting a good faith exception to the Wisconsin exclusionary rule, the circuit court's suppression order must be affirmed.

I agree with the majority's conclusion that "this case is not a proper vehicle for deciding whether to adopt a good-faith exception to the exclusionary rule." At page 454. This case involves a John Doe judge (magistrate) who has no authority to issue material witness warrants. *See State v. Brady,* 118 Wis. 2d 154, 345 N.W.2d 533 (Ct. App. 1984). By contrast, in *Leon* the magistrate had authority to issue warrants but the warrant violated the probable cause requirement of the fourth amendment. In *Massachusetts v. Sheppard,* 104 S. Ct. 3424 (1984), the United States Supreme Court applied the good faith exception to a warrant that had a technical error in describing the evidence to be seized. It is not clear whether *Leon* and *Sheppard* apply only to cases in which the magistrate has authority to issue a warrant but there was lack of probable cause or a technical error in the warrant, or to cases such as this one in which the magistrate has no authority whatsoever to issue the warrant.

Because *Leon* does not clearly set forth the conditions under which the good faith exception is applicable and because this case involves a magistrate who has no authority to issue the warrant, this is not an appropriate case for deciding whether this court should adopt the *Leon* good faith exception to the exclusionary rule under art. I, sec. 11 of the Wisconsin Constitution. I would therefore affirm the suppression order of the circuit court.

STEINMETZ, J. *(concurring).* I agree with the majority's holding that there was insufficient evidence presented to the John Doe judge for the material witness warrant to be issued pursuant to sec. 969.01(3), Stats. Having explained the insufficiency of the affidavit to show that a subpoena would be impracticable, I believe the court should not have evaluated the constitutionality of the arrest. The arrest was illegal under the requirements of the statute.

I therefore find unnecessary the discussion which relates a material witness warrant to the fourth amendment of the United States Constitution as a constitutional requirement for the sec. 969.01(3), Stats., warrant.

The fourth amendment discussion in the majority opinion implies that an arrest pursuant to a material witness warrant authorizes the police to treat the detained person like a prisoner detained for a criminal violation. The scope of the seizure, however, must be strictly tied to and justified by the circumstances which rendered it permissible. *Terry v. Ohio,* 392 U.S. 1, 19 (1968). Thus, execution of the material witness warrant may not allow police the authority to interrogate the witness prior to his appearance before a judge.

Because interrogation may not be permissible, it is also unclear whether *Miranda* warnings[1] are required. This case suggests that a proper witness arrest permits such interrogation and requires *Miranda* warnings. I emphasize that we leave to another case in which the issue is directly involved the decision of whether the officer serving the material witness warrant may conduct any interrogation.

This case also does not decide whether and to what extent *Miranda* warnings are required whenever a material witness arrest warrant is executed. A question about *Miranda*'s first two admonitions seemingly exists if interrogation is prohibited. The two cautions include the detainee's right to remain silent and the warning that any statements he makes may be used against the person. It may be a long way temporally and geographically from the seizure of the person to the appearance before a judge for the setting of bail. Because volunteered and incriminating statements may be made during that time, the *Miranda* issue is important to determine the admissibility of such evidence in a criminal proceeding. It appears that other advice in *Miranda* is inappropriate, *i.e.,* that the detainee has the right to an attorney and to have one appointed at government's expense if he is indigent.

By unnecessarily mentioning the fourth amendment in the majority opinion, the court also raises a question, without deciding it, as to what evidence the arresting officer may confiscate, if any, when the material witness warrant is executed, *i.e.,* plain view contraband leading to a criminal charge unrelated to the John Doe investigation or evidence of the crime which

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

is the subject of the John Doe investigation. The purpose of the material witness warrant is only to ensure that the person's knowledge of the matter being investigated will become known and will not be lost by flight of the witness. Whether incidental searches are permitted, therefore, is a debatable question.

The issues that I perceive arise because the exclusive purpose of the material witness arrest warrant is to bring the person directly before the John Doe judge or to assure his presence by imposing bail. A material witness warrant, therefore, may not authorize the same police conduct as a criminal arrest warrant. Thus, the majority opinion raises unnecessary questions foreign to this case as to the restrictions on police executing a material witness arrest based on the statutory warrant provisions.

Since we do not reach the *Leon*[2] "good faith" exception to the warrant requirement in this case, and we accepted the case through certification, I would affirm the trial court's order of suppression. Because the documentation in this record before the John Doe judge was insufficient for the issuance of the material witness warrant, that issue is decisive. The insufficiency in the statutory process is that there is no statement that the witness was intending to leave the jurisdiction, except by innuendo, not even inference, and that he would not have responded to a subpoena. Therefore, we do not get to the issue for which certification of the case was granted.

The concurrence by Justice Abrahamson also is disturbing in its suggestion that the exclusionary rule under art. I, sec. 11 of the Wisconsin Constitution is not

[2] *United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405 (1984).

grounded in the fourth amendment. It is not a proper statement that *Hoyer v. State,* 180 Wis. 407, 193 N.W. 89 (1923) established the Wisconsin exclusionary rule grounded exclusively in the state constitution independent of the United States Supreme Court with respect to fourth amendment violations. *Hoyer* was decided before *Mapp v. Ohio,* 367 U.S. 643 (1961) which superimposed the fourth amendment on the states through the fourteenth amendment.

I emphasize that there is no basis in our prior decisions which indicates that art. I, sec. 11 provides broader protection than the fourth amendment. In *State v. Doe,* 78 Wis. 2d 161, 171, 254 N.W.2d 210 (1977), the court did state that "it is the prerogative of the State of Wisconsin to afford greater protection to the liberties of persons within its boundaries under the Wisconsin Constitution than is mandated by the United States Supreme Court under the *Fourteenth Amendment.*" (Emphasis added.) The court then cited two examples as indicative of our willingness to require protections under the state constitution before the Supreme Court mandated us to provide such protections under the fourteenth amendment. The examples were: (1) the right to counsel at state expense for indigents; and (2) the exclusionary rule for illegally secured evidence. These are not examples, however, of instances when we construed our constitution to provide broader protections than comparable federal constitutional provisions. Instead, they are examples of construing comparable provisions similarly when the federal constitutional requirement had not yet been held to be binding on the states under the fourteenth amendment.

In fact, the exclusionary rule provides the classic example of conforming our constitutional provision to the federal counterpart. In *Hoyer v. State,* 180 Wis. 407, the court considered whether to adopt an exclusionary rule for illegally seized evidence. The court first noted that art. I, sec. 11 of the Wisconsin Constitution "corresponds in substance" with the fourteenth amendment, but that the fourth amendment did not control the issue because it was not binding on the states. *Id.* at 411. The court, however, looked to the fourth amendment for guidance in construing the Wisconsin Constitution. The court stated:

> "The federal and many other courts, however, have held that on proper challenge the state will not be permitted to use against a defendant charged with crime evidence which appears to have been seized or obtained by government officials by or through a violation of constitutionally guaranteed rights." *Id.* at 412.

The court then decided to "align itself with rulings of the United States Supreme Court" by adopting an exclusionary rule. The court stated:

> "For ourselves we elect to stand, as this court has heretofore stood, with the federal and other courts which consider these provisions of the Bill of Rights as embodied in constitutions to be of substance rather than mere tinsel. We hold, therefore, that the evidence challenged in this case was taken by the officers by unlawful search and seizure and contrary to sec. 11, art. I, Wis. Const., *supra,* and was improperly received in evidence against him on the trial in violation of his rights under sec. 8, art. I, Wis. Const.

"This court squarely aligned itself with rulings of the United States supreme court in *Thornton v. State,* 117 Wis. 338, 341, 93 N.W. 1107, and *State v. Murphy,* 128 Wis. 201, 207, 107 N.W. 470, each of which cited with approval *Boyd v. U.S.,* 116 U.S. 616, 6 Sup. Ct. 524, and *Bram v. U.S.,* 168 U.S. 532, 18 Sup. Ct. 183, *infra." Id.* at 415.

Thus, *Hoyer* is not an example where this court construed art. I, sec. 11 of the Wisconsin Constitution to be more protective than the fourth amendment. The *Hoyer* decision patterned art. I, sec. 11 after the fourth amendment, rather than anticipating Supreme Court interpretations of the fourth amendment.

Finally, I do not believe it appropriate, as the concurring opinion has done, to comment on or attempt to analyze *United States v. Leon,* since we have stated in the majority opinion that we do not reach the *Leon* case and its "good faith" exception to the exclusionary rule due to the inadequate affidavits for issuance of the material witness arrest warrant.

I am authorized to state that Mr. JUSTICE LOUIS J. CECI joins this concurring opinion.

LOUIS J. CECI, J. *(concurring).* Although I join Justice Steinmetz's concurrence, I write separately to emphasize the proper characterization of *Hoyer v. State,* 180 Wis. 407, 193 N.W. 89 (1923). Justice Abrahamson's concurrence states that *Hoyer* stands for the proposition that the exclusionary rule has been established in this jurisdiction on grounds independent of the federal constitution and United States Supreme Court decisions. Although superficially appealing to some, such a proposition may not accurately be inferred from the *Hoyer* decision. On the contrary, *Hoyer*

461

suggests that the protections extended under art. I, sec. 11 of the Wisconsin Constitution and under the federal fourth amendment are coextensive.

There is no question that the *Hoyer* court, after noting that art. I, sec. 11 is identical with the fourth amendment, *Hoyer* at 411, relied on federal case law in developing this state's exclusionary rule. *Id.* at 415. Such reliance must not be so insouciantly cast aside.

Indeed, there is inherent logic in looking toward the federal courts for guidance in interpreting our own constitution, particularly when the relevant provisions are virtually identical, as here. When the committee on the bill of rights to the Wisconsin constitutional convention drafted a bill of rights, it proposed a section against unreasonable searches and seizures. The section was and is identical in wording to the fourth amendment. *See, Journal of the Convention to Form a Constitution for the State of Wisconsin* at 124, October 28, 1846, entry (B. Brown, printer, 1847). That section was approved by the convention on November 23, 1846.[1]

---

[1] In its preratification existence, art. I, sec. 11 promoted little recorded discussion, although the debate on the proposed bill of rights in general created much "human outrage" when introduced by the committee on bill of rights to the constitutional convention, *see,* Wisconsin Historical Publications, *The Struggle Over Ratification 1846–47* at 79, Collections vol. XXVIII, Constitutional Series vol. III (M. Quaife ed. 1918). The identical precursor to art. I, sec. 11 was apparently one of only two sections of the bill of rights to "escape the knife" and was approved without amendment. *Id.; see also,* Wisconsin Historical Publications, *The Convention of 1846* at 526, 749, Collections vol. XXVII, Constitutional Series vol. II (M. Quaife ed. 1918).

One may properly conclude that the committee on the bill of rights to the Wisconsin constitutional convention modeled art. I, sec. 11 after the federal fourth amendment and deemed such section sufficient to attain the desired protection. *Cf.,* Wisconsin Historical Publications, *The Convention of 1846* at 375, Collections vol. XXVII, Constitutional Series vol. II (M. Quaife ed. 1919) (wording of proposed section in Wisconsin bill of rights regarding the impairment of the validity of contracts also found in U. S. Constitution and may other states' constitutions; that section, as proposed, deemed not to have desired effect of sufficiently restraining legislatures in those jurisdictions; amendment to proposed section therefore urged for this jurisdiction); *see also, Thornton v. State,* 117 Wis. 338, 347, 93 N.W. 1107 (1903). As art. I, sec. 11 is modeled after the fourth amendment, it is only logical to interpret the modeled provision, art. I, sec. 11, in terms of the model, the fourth amendment. This court has undertaken exactly that analysis in the past, as evidenced in *Hoyer,* and should continue to undertake the same analysis in the future.