STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael R. HESS, Defendant-Appellant.†

Court of Appeals

*No. 2008AP2231–CR. Submitted on briefs April 23, 2009.
—Decided June 17, 2009.*

2009 WI App 105

(Also reported in 770 N.W.2d 769.)

† Petition to review granted, decision pending.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *George M. Tauscheck* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Aaron R. O'Neil*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. Wisconsin adopted a good faith exception to the exclusionary rule in *State v. Eason*, 2001 WI 98, ¶ 74, 245 Wis. 2d 206, 629 N.W.2d 625. When people close to the criminal law discuss this exception, they speak of a scenario where law enforcement officers seek to do something, get judicial approval to do it (a warrant), and act in good faith reliance on that judicial approval. In that scenario, the good faith exception provides that law enforcement's reliance will not come back to haunt them if there was a procedural error. Generally this means that courts will admit evidence even if the issuing magistrate made a mistake in approving the warrant application because suppression would not fulfill the main purpose of the exclusionary rule—deterring police misconduct.

¶ 2. But, deterring police misconduct is only one of the exclusionary rule's two purposes. The exclusionary rule was also designed to keep out evidence that

undermines judicial integrity. This purpose is not often discussed, but it is as much a part of the law now as it was when Wisconsin adopted the exclusionary rule in 1923. The facts in this case present the first situation in Wisconsin where judicial integrity has squarely collided with the good faith exception.

¶ 3. The question here is whether the evidence is admissible if it was seized while law enforcement was executing a warrant issued by a judge who had no authority whatsoever to issue the warrant. Other jurisdictions have answered this question "no" because a warrant issued by one without the authority to do so is void from the beginning, and no amount of objectively reasonable reliance or good faith by law enforcement can save a void warrant. We agree. The truth is, this case has nothing to do with the reason for the good faith exception (admitting evidence when exclusion will not deter police misconduct or judicial approval of misguided law enforcement action), and everything to do with what happens when a judge's actions threaten the integrity of the judiciary because he or she exercises power never granted to judges in the first place. We conclude that when a judge acts without any authority whatsoever, the warrant is void from the very beginning, and any evidence seized pursuant to it must be suppressed. We thus reverse and remand with directions that proceedings progress without the suppressed evidence.

### Background

¶ 4. Michael R. Hess was released on bond pending sentencing for a felony operating a motor vehicle while intoxicated conviction. The trial court had ordered a presentence investigation report (PSI) to be completed before March 13, 2007, in anticipation of a

606

sentencing hearing scheduled fifteen days later. The PSI writer then contacted Hess to come in for an interview so that the writer could add his version of his various life events to the PSI. Hess came in, but left before the PSI writer could complete the interview. When the PSI writer attempted to arrange another appointment to finish the PSI, Hess did not respond and never otherwise made himself available to complete the interview. The PSI writer was provoked enough by Hess's inaction to send a letter to the trial court, dated February 8, 2007, explaining that she could not finish the PSI because Hess had failed to reschedule his appointment. The PSI writer requested in her letter that the trial court place Hess in custody to allow completion of the PSI.

¶ 5. The trial court ordered a civil bench warrant for Hess's arrest. A deputy sheriff then went to Hess's residence to arrest him. While the deputy was escorting him to the squad car, he smelled alcohol on Hess's breath. A subsequent forced blood test revealed that Hess's blood alcohol concentration was 0.118 grams per 100 milliliters. This was a breach of the condition of Hess's bond requiring that he refrain from drinking alcohol. The State then charged Hess with felony bail jumping.

¶ 6. Hess filed a motion to suppress the evidence, alleging that the State seized the evidence of his intoxication as the result of an illegally issued civil bench warrant in violation of his federal and state constitutional rights. He argued for application of the exclusionary rule because the trial court had no authority to issue a civil bench warrant for his arrest.

¶ 7. The trial court concluded that the arrest warrant was legal, and, even if it was not, the good faith exception saved its admissibility. The trial court rea-

soned that the deputy had a good faith reason to believe that the warrant was valid and the judge had the authority to issue it. And, the trial court concluded, if the court could not issue an arrest warrant to force a defendant to meet with the PSI writer, then defendants would simply refuse to appear. The case then went to a jury trial, and the jury returned a guilty verdict. Hess appeals, asserting the same arguments on appeal as he did in the trial court.

## Discussion

¶ 8. In reviewing a motion to suppress, we apply a two-step standard of review. *State v. Pallone*, 2000 WI 77, ¶ 27, 236 Wis. 2d 162, 613 N.W.2d 568. First, we review the trial court's findings of historical fact, and will uphold them unless they are clearly erroneous. *Id.* Second, we review the application of constitutional principles to those facts de novo. *Id.*

¶ 9. On appeal, the parties concede that the arrest warrant was improper because the trial court had no authority under either the contempt chapter or the civil arrest chapter to authorize an arrest warrant for Hess. However, while we ultimately agree with the parties that error existed, we reject the concession in order to help in our discussion of why the warrant was void from the beginning.

### *The Validity of the Warrant*

¶ 10. We are not exactly sure what legal ground the trial court thought it was acting upon when it issued the civil arrest warrant. The trial court issued an arrest warrant for Hess on a civil bench warrant form. However, at the motion hearing, the trial court suggested that it actually issued the warrant in order to

608

bring Hess before the court for contempt of court. In its brief, the State provides us with a third view. It surmises that the trial court actually intended to issue a criminal bench warrant. These three different legal acts of a court of record—(a) a civil bench warrant, (b) a criminal bench warrant, and (c) a contempt warrant—require us to briefly discuss their differences and demonstrate why none apply in this case.

¶ 11. WISCONSIN STAT. ch. 818 (2007–08)[1] is the civil bench warrant chapter and it authorizes trial judges to issue bench warrants in certain *civil* cases. The underlying action in this case is a felony *criminal* case, so the trial court had no authority to issue a civil bench warrant.

¶ 12. WISCONSIN STAT. § 968.09(1) authorizes courts in criminal cases to issue a bench warrant for the defendant's arrest when the defendant fails to appear upon a court order or violates a term of bond or probation. This statute, too, is inapplicable for three reasons. First, there was no failure to appear before the court by court order. Second, while the trial court did order a PSI, it did not order Hess to meet with the PSI writer and such an order cannot be implied. To underscore this point, no law in Wisconsin requires a defendant to cooperate with the PSI writer, *see* WIS. STAT. § 972.15, and a PSI can be written without the defendant's cooperation. *State v. Church*, 2002 WI App 212, ¶ 5, 257 Wis. 2d 442, 650 N.W.2d 873 (noting the defendant failed to cooperate with the PSI writer, so the writer completed the PSI with other sources of information), *rev'd on other grounds by* 2003 WI 74, 262

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

Wis. 2d 678, 665 N.W.2d 141. Third, at the time the civil arrest warrant was issued, there were no facts suggesting that Hess had violated any terms of his bond. Therefore, the trial court would have had no legal basis to issue a criminal bench warrant even had it so contemplated that this is what it was doing.

¶ 13. Wisconsin Stat. ch. 785 controls arrests for contempt of court. The type of contempt of court relevant here requires that the court have actually ordered the defendant to do something. Wis. Stat. § 785.01(1)(b). As we stated before, the court did not order Hess to cooperate with the PSI writer. The trial court in this case thus had no legal authority to issue a contempt warrant either.

¶ 14. Courts are authorized to issue arrest warrants pursuant to statute only. *See Wagner v. Lathers*, 26 Wis. 436, 438, 1870 WL 4067 (1870). The trial court's arrest warrant was therefore invalid because it had no authority to issue an arrest warrant when there was no order requiring Hess's presence and no facts suggesting Hess had violated the terms of his bond. Given that the arrest warrant was invalid, we next determine if we must suppress the evidence seized as a result of executing the invalid warrant.

### 1. The Exclusionary Rule

¶ 15. The right to be free from unreasonable searches and seizures is found in article I, section 11 of the Wisconsin Constitution, which states:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no

warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

WIS. CONST. art. I, § 11. Whether the conduct in this case violates that constitutional right is a question of constitutional fact that we review independently of the lower court. *State v. Kramer*, 2009 WI 14, ¶ 16, 315 Wis. 2d 414, 759 N.W.2d 598.

██

¶ 16. Historically, Wisconsin courts have interpreted article I, section 11 to provide the same constitutional guarantees as the Supreme Court has accorded through its interpretation of the Fourth Amendment. *Id.*, ¶ 18. For example, in *Hoyer v. State*, 180 Wis. 407, 412, 415, 193 N.W. 89 (1923), our supreme court adopted the exclusionary rule consistent with the United States Supreme Court's creation of the exclusionary rule under the Fourth Amendment. The exclusionary rule is a judicially-created concept premised on suppressing evidence that "is *in some sense* the product of illegal governmental activity." *State v. Knapp*, 2005 WI 127, ¶ 22, 285 Wis. 2d 86, 700 N.W.2d 899 (emphasis in original; citation omitted). The rule's primary purpose is deterring lawless police conduct, along with preserving judicial integrity. *Terry v. Ohio*, 392 U.S. 1, 12–13 (1968).

¶ 17. Shortly after Wisconsin adopted the exclusionary rule in *Hoyer*, our supreme court applied the exclusionary rule to a situation similar to that here: law enforcement seized evidence pursuant to a search warrant issued by a magistrate without the authority to issue search warrants. *See State v. Kriegbaum*, 194 Wis. 229, 232, 215 N.W. 896 (1927). *Kriegbaum* held that

receipt into evidence of the fruits of a warrant issued by one having no such authority violates a right under the Wisconsin constitution to be free from unreasonable searches and seizures. *Id.* More recently, in *State v. Grawien*, 123 Wis. 2d 428, 431–33, 367 N.W.2d 816 (Ct. App. 1985), this court suppressed evidence because it was seized after a "search made pursuant to [a] warrant issued by a justice of the peace to whom the legislature had not granted the power to issue such a warrant." We concluded that such a search is unreasonable and in violation of the defendant's constitutional rights under article I, section 11. *Grawien*, 123 Wis. 2d at 431–33.

¶ 18. Though the exceptions to the exclusionary rule have changed, the basic exclusionary rule established in *Hoyer* has not. *See Eason*, 245 Wis. 2d 206, ¶ 57 (concluding that the new exception to the exclusionary rule did not require overruling *Hoyer*). Thus, under *Kriegbaum*, we are bound to conclude that the evidence of Hess's intoxication is subject to the exclusionary rule because it was found pursuant to a warrant issued by a judge with no legal authority to issue such a warrant. The next step in our inquiry is to determine if the evidence is admissible under the good faith exception to the exclusionary rule established in *Eason*.

### 2. The Good Faith Exception

¶ 19. The good faith exception was originally created by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984). The exception exempts evidence from the exclusionary rule when the law enforcement's good faith reliance on the judge's

determination of probable cause was objectively reasonable. *Id.* at 898–99. In *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), the United States Supreme Court also extended the good faith exception to warrants with clerical errors. *Id.* at 990–91.

¶ 20. Two years after *Leon*, our supreme court was again presented with the issue of whether evidence should be excluded if it was seized pursuant to a warrant issued by one without the authority to do so. *See State v. Brady*, 130 Wis. 2d 443, 388 N.W.2d 151 (1986). However, at that time our supreme court declined to decide whether to adopt a good faith exception to the exclusionary rule. *Id.* at 454. Still, the court was cognizant of the federal good faith exception. Chief Justice Abrahamson, in her concurrence, pointed out that it is unclear if the exception applies to only *Leon* and *Sheppard* situations where "the magistrate [or judge] has authority to issue a warrant but there was lack of probable cause or a technical error in the warrant," or if the good faith exception also applies to warrants "in which the magistrate [or judge] has no authority whatsoever to issue the warrant." *Brady*, 130 Wis. 2d at 455 (Abrahamson, C.J., concurring).

■

¶ 21. Since *Brady*, Wisconsin has adopted a good faith exception to the exclusionary rule. *See Eason*, 245 Wis. 2d 206, ¶ 74. Wisconsin's exception is modeled after the federal good faith exception: "where police officers act in objectively reasonable reliance upon the warrant, which had been issued by a detached and neutral magistrate, a good faith exception to the exclusionary rule applies." *Id.* Our supreme court has also followed the United States Supreme Court in concluding that the application of the exclusionary rule is not absolute, but rather is connected to the public interest,

which requires a balancing of the relevant interests. *Id.*, ¶ 43.[2] Said another way, the good faith exception carves out an exception to the exclusionary rule allowing the admission of evidence when law enforcement officers did what they were supposed to—they followed through in objective good faith, but someone made an accidental clerical or technical error or the judge erred in concluding that the law enforcement's application fulfilled the requirements for a warrant.

■■■

¶ 22. The State argues that the good faith exception applies here because the issue in this case is one of judicial error. *See id.*, ¶ 33 (excluding evidence because of judicial error would not deter judges, so the exclusionary rule does not apply to judicial error). But, we disagree that this controls the issue here. When good faith jurisprudence discusses "judicial error," it speaks of misjudging the sufficiency of the evidence or the warrant application's fulfillment of the statutory requirements. *See, e.g., id.*, ¶¶ 33–34. The trial court here did not make that type of error. Instead, it acted outside of the law, outside of the authority granted to judges in the first place. Deference to judges is not boundless. *Id.*, ¶ 34. Our search of the relevant case

---

[2] However, our supreme court has concluded that article I, section 11 of the Wisconsin Constitution requires the State to prove that it followed a specific two-step process, in addition to the requirements in *United States v. Leon*, 468 U.S. 897 (1984). *State v. Eason*, 2001 WI 98, ¶ 3, 245 Wis. 2d 206, 629 N.W.2d 625. The State also has the burden to show that the process used in obtaining the search warrant included (1) "a significant investigation" and (2) "review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney." *Id.*

law in Wisconsin and elsewhere has turned up no case that conjoined a judge's issuance of a warrant without any authority whatsoever with the type of judicial error found in good faith cases. We conclude that the constitutional problem with the warrant in this case is not one of basic judicial error, but one of judicial authority.

¶ 23. Still, the State argues, as we interpret it, that this is inconsequential because the deputy acted in objective good faith in executing the warrant, and the judge was the one who made the mistake, so suppressing the evidence would not deter police misconduct. The argument begs the question. Deterring police misconduct is only one of the exclusionary rule's two purposes. The exclusionary rule is also meant to preserve judicial integrity. Given the rule's dual purposes, we must examine whether the good faith exception applies to threats to judicial integrity.

¶ 24. The good faith exception was created to admit evidence where suppression would not contribute to the *purposes* of the exclusionary rule. *Id.*, ¶ 34 (citing *Leon*, 468 U.S. at 918). However, though *Eason* used the word purposes, our supreme court discussed judicial integrity only as it was relevant to the issue before it. *See Eason*, 245 Wis. 2d 206, ¶¶ 48, 55. It described a threat to judicial integrity as a situation where "the judiciary giv[es] its imprimatur to police misconduct." *Id.*, ¶ 55.

¶ 25. However, our supreme court provided a fuller explanation of judicial integrity in *Knapp*, 285 Wis. 2d 86, ¶ 79:

> It was of this [judicial integrity] that Mr. Justice Holmes and Mr. Justice Brandeis so eloquently spoke in *Olmstead v. United States*[, 277 U.S. 438 (1928)] . . . .

"For those who agree with me," said Mr. Justice Holmes, "no distinction can be taken between the Government as prosecutor and the Government as judge." . . . "In a government of laws," said Mr. Justice Brandeis, "existence of the government will be imperiled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for the law; it invites every man [or woman] to become a law unto himself [or herself]; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face." (Citations omitted.)

Courts preserve judicial integrity in part by ensuring that our judicial process does not sanction, approve and be party to constitutional violations. *Conrad v. State*, 63 Wis. 2d 616, 635, 218 N.W.2d 252 (1974). Therefore, we are satisfied that judicial integrity is threatened not only when a judge condones police misconduct, but also when the judge acts outside of the law.

¶ 26. Several other state and federal courts have already addressed this problem and have concluded that the good faith exception does not apply when a judge acts outside the law by issuing a warrant he or she had no authority whatsoever to issue. We will discuss only a few, but cite others in a footnote.[3]

---

[3] *See, e.g., United States v. Neering*, 194 F. Supp. 2d 620, 628 (E.D. Mich. 2002) (holding that a deputy magistrate not properly appointed to the position lacked authority to issue a warrant, rendering it void); *State v. Berkwit*, 689 S.W.2d 763, 765–66 (Mo. App. E.D. 1985) (holding that the good faith

¶ 27. In *United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001), the sixth circuit held that "when a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void *ab initio*." A warrant that is void ab initio is one that is void "[f]rom the beginning." BLACK'S LAW DICTIONARY 5 (8th ed. 2004). In *Scott*, police officers sought a search warrant from a retired state judge whose term of judicial office had expired. *Scott*, 260 F.3d at 513–14. The court concluded that the good faith exception did not apply because "*Leon* presupposed that the warrant was issued by a magistrate or judge clothed in the proper legal authority" when it required that the warrant be "issued by a detached and neutral magistrate." *Scott*, 260 F.3d at 515 (citing *Leon*, 468 U.S. at 900). Therefore the court opined that when a warrant is void ab initio, the good faith exception cannot save the evidence from exclusion. *Scott*, 260 F.3d at 515.

¶ 28. In *Bosteder v. City of Renton*, 117 P.3d 316, 323 (Wash. 2005), *superseded by statute on other grounds as stated in Wright v. Terrell*, 170 P.3d 570, 571 n.1 (Wash. 2007), the Washington supreme court decided an issue even closer to the one at hand: whether the good faith exception applied to a warrant issued by a district judge with the authority to issue warrants, but without the authority to issue the *specific* warrant in controversy. The court closely followed the reasoning

exception does not excuse a failure to comply with warrant statutes, so evidence seized pursuant to a warrant issued by one without any authority must be suppressed); *see also United States v. Bailey*, 193 F. Supp. 2d 1044, 1052–53 (S.D. Ohio 2002) (stating that the good faith exception does not apply if the issuing judicial officer was without legal authority to issue such order, but concluding that the judicial officer did have the authority).

in *Scott*, and ultimately concluded that a warrant issued by someone without the specific authority to issue that warrant is also void ab initio, even if that person had the authority to issue other warrants. *Bosteder*, 117 P.3d at 323. In so concluding, the court held that the initial requirement for a valid warrant is that the person issuing the warrant have the delegated authority to do so. *Id.* Therefore, the court concluded the warrant was void, so "there was effectively *no* warrant" and the search was unreasonable and in violation of the Fourth Amendment. *Id.* at 324–25.

¶ 29. Stated another way in *State v. Wilson*, 2000 SD 133, ¶¶ 17, 20, 618 N.W.2d 513, the judge's lack of authority strips the judge of jurisdiction, and "[a]ctions by a police officer cannot be used to create jurisdiction, even when done in good faith."

¶ 30. We agree with these cases. The act of issuing a warrant without any authority whatsoever to do so, thus being void from the beginning, is not a "judicial" act and the attempt to clothe it as such is contrary to judicial integrity. Courts further the exclusionary rule's purpose of preserving judicial integrity by excluding evidence in cases like the one before us, because to do otherwise would make judicial actions untouchable, and leave no remedy for those wronged by the consequences of judges acting without any legal authority whatsoever. To borrow words from *State v. Sloan*, 2007 WI App 146, ¶ 38, 303 Wis. 2d 438, 736 N.W.2d 189, "[s]uch an outcome would dilute the Fourth Amendment requirement[s] of reasonableness . . . to the strength of mist or vapor." We therefore hold that a warrant issued by a judge without any authority whatsoever to do so is void, any search or seizure pursuant to that void warrant is not clothed with judicial authority,

and the good faith exception does not operate to save the evidence seized. We reverse and remand with directions that Hess's felony bail jumping charge be retried with the evidence seized pursuant to Hess's illegal arrest suppressed.

■

¶ 31. We conclude with an afterword. The trial court seemed to be of the opinion that, if it has no authority to haul a convicted defendant into court for failing to cooperate with the PSI writer, then criminal defendants may stop participating in the fact gathering that takes place during a PSI. We look at it differently. As we have already stated, a PSI can be written without the defendant's cooperation. If a defendant does not want to give his or her version of life history and family situation and does not want to give his or her side of the story with regard to past and present criminal behavior, so be it. The PSI will still be written and will still be submitted to the court for its consideration. The recalcitrant defendant cannot complain later if the PSI appears to the defendant to be one-sided. And, should the defendant fail to cooperate, he or she does so at great risk. A sentencing court could well find that the behavior shows contempt for the judicial process and is therefore indicative of bad character.[4]

---

[4] There may also be other remedies available, but we do not discuss them other than to say that they *might be* available. For example, if the court gets word that the defendant is not cooperating with the PSI writer, it may be possible to order the defendant back to court and then issue an order that the defendant cooperate with the PSI writer. WISCONSIN STAT. § 969.09(1) states, in pertinent part: "If a defendant is admitted to bail before sentencing[,] the conditions of the bond shall include, without limitation . . . that the defendant will submit to

*By the Court.*—Judgment reversed and cause remanded with directions.

the orders and process of the court." Whether this statute may be used by a trial court to mandate cooperation with the PSI writer awaits another day.