# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP2455-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Appellant, |
| |    v. |
| | Christopher John Kerr, |
| |         Defendant-Respondent. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | July 6, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 11, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Bayfield |
| JUDGE: | John P. Anderson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ZIEGLER, J., concurs, joined by ROGGENSACK, C.J., GABLEMAN, J., and KELLY, J., (joins footnote 2) (opinion filed). |
| DISSENTED: | A.W. BRADLEY, J., dissents, joined by ABRAHAMSON, J. (opinion filed). |
| | R.G. BRADLEY, J., dissents (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-appellant, there were briefs by *Misha Tseytlin*, solicitor general, with whom on the briefs were *Brad D. Schimel*, attorney general, and *Amy C. Miller*, assistant solicitor general. There was an oral argument by *Misha Tseytlin*, solicitor general.

For the defendant-respondent, there was a brief filed by *Linda I. Coleman*, *John R. Carlson*, and *Sears, Carlson & Coleman, S.C.*, Washburn. There was an oral argument by *John R. Carlson*.

No. 2016AP2455-CR
(L.C. No. 2015CF139)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

  Plaintiff-Appellant,

  v.

Christopher John Kerr,

  Defendant-Respondent.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**FILED**

**JUL 6, 2018**

Sheila T. Reiff
Clerk of Supreme Court

APPEAL from an order of the Circuit Court for Bayfield County, John P. Anderson, Judge. *Reversed and cause remanded.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of the Bayfield County circuit court's order granting Christopher John Kerr's ("Kerr") motion to suppress evidence discovered during a search incident to arrest on the basis that "'judicial integrity' is vital enough to justify exclusion of evidence when

the issuing court's arrest warrant was invalid ab initio."[1] We reverse.

¶2 On September 27, 2015, two officers were dispatched to follow up on a 9-1-1 hang-up call from Kerr's residence. En route, they were advised by dispatch that there was an outstanding arrest warrant for Kerr in Ashland County. When the officers arrived at Kerr's residence, they discovered that the 9-1-1 call was in error, but arrested Kerr pursuant to the arrest warrant. In conducting a search incident to arrest, the officers discovered methamphetamine in Kerr's pants pocket. The State subsequently charged Kerr with one count of possession of methamphetamine in violation of Wis. Stat. § 961.41(3g)(g) (2015-16).[2]

¶3 Kerr filed a pre-trial motion to suppress the evidence discovered during the search incident to arrest. He argued that, while a warrant had been issued, and law enforcement did not engage in any misconduct in executing the warrant, his constitutional rights were nonetheless violated because he was jailed without the issuing court first inquiring as to his ability to pay, without being given notice that his ability to

---

[1] The Honorable Robert E. Eaton of Ashland County issued the warrant (the "issuing court"), but, because the arrest occurred in Bayfield County, the Honorable John P. Anderson of Bayfield County presided over the motion to suppress and reviewed the warrant (the "reviewing court").

[2] All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

pay is at issue, and without a meaningful opportunity to be heard. He argued that the warrant would not have been issued, and he would not have been arrested or searched incident to arrest, if he had been afforded due process in the forfeiture action.[3]

¶4 After extensive briefing and three hearings, the reviewing court granted Kerr's motion to suppress. It concluded that, although "[t]here is no question that the [issuing court], as a court of general jurisdiction, has the constitutional and statutory authority to hear and process municipal citations," the warrant was "not in compliance with the statutory requirements and clearly violated defendant's statutory due process rights." The reviewing court then concluded that suppression under the exclusionary rule was proper based on the "Wisconsin rule that 'judicial integrity' is vital enough to justify exclusion of evidence when the issuing court's arrest warrant was invalid ab initio." In so concluding, the reviewing

---

[3] At the reviewing court, Kerr's arguments were somewhat different than the arguments he presented to this court. He asserted that the issuing court did not follow the requirements of Wis. Stat. ch. 818 in issuing a civil bench warrant. He also argued that, because there was no affidavit and there was no contempt in the presence of the court, there was simply no authority for this warrant to be issued. The reviewing court ordered further briefing on the issue of whether the issuing court had authority to proceed as a municipal court pursuant to Wis. Stat. §§ 66.0114, 800.09, 800.095. At the hearing on that issue, the State informed the court that the arrest warrant was issued pursuant to Wis. Stat. § 778.09, but, before this court, both parties apparently agree that Wis. Stat. § 800.095 governs the issuance of the warrant.

court referenced the deterrent purpose of the exclusionary rule and how "[h]ere the conduct is not isolated and may be the rule, not the exception. Dete[r]rence certainly is a greater consideration under these facts."

¶5 The State sought interlocutory review and filed a petition to bypass the court of appeals, seeking immediate review from this court. We granted the State's petition to bypass.

¶6 Our overarching inquiry in this case is whether the reviewing court erred in granting Kerr's motion to suppress. Fundamental to our analysis is whether evidence discovered during a search incident to arrest is properly suppressed under the exclusionary rule when there is no police misconduct. We conclude that suppression is not appropriate because the sole purpose of the exclusionary rule is to deter police misconduct, and there is no police misconduct here. Neither judicial integrity nor judicial error is a standalone basis for suppression under the exclusionary rule.[4] We therefore conclude that the reviewing court's grant of Kerr's motion to suppress on the basis of judicial integrity is error.

---

[4] In so concluding, we consider whether to overrule State v. Hess, 2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568. We conclude that Hess need not be overruled because the lead opinion's view in Hess of "judicial integrity" as a standalone justification for suppression under the exclusionary rule did not garner the support of a majority of the court; as such, it has no precedential value that requires reconsideration in this case.

¶7    Accordingly, we reverse the Bayfield County circuit court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Warrant

¶8    A certified copy of the record for <u>City of Ashland v. Kerr</u>, No. 2015FO219, is included in the record before us, but it is particularly lean.  This record reflects that, on June 16, 2015, Kerr was mailed a citation for disorderly conduct, in violation of City of Ashland ordinance 201.03.[5]  This citation notified Kerr to appear, if he so chose, at 10:00 a.m. on July 21, 2015.[6]  This record also reflects that, on July 21, 2015, when Kerr failed to appear, the issuing court entered a default judgment in the amount of $263.50 with 60 days to pay, and that on July 31, 2015, the clerk sent notice of the default judgment to Kerr (although neither the judgment nor the notice is in the record).[7]  On September 22, 2015, 60 days after default

---

[5] Disorderly conduct may also be prosecuted as a crime.  <u>See</u> Wis. Stat. § 947.01.  Kerr was not charged with a crime; rather, a civil municipal ticket was issued.

[6] This ticket, unlike some, did not require a mandatory appearance in court; instead, Kerr could avoid coming to court by paying the citation.

[7] In his brief before this court, Kerr alleges that the notice of default judgment was not sent to him until "September of 2016."  While the reviewing court decision did state that "[t]he record of [2015FO219] indicates a notice of default judgment on July 31, 2015, and then again on September 15, 2016," this is clearly in error.

(continued)

judgment was entered, the court issued a commitment order/arrest warrant[8] for Kerr to "detain [him] in custody for 90 days or until $298.50[9] is paid, or until the person is discharged by due course of law." This warrant was issued on the basis that

---

The four-page record for 2015FO219, a certified copy of which is in the record before this court, is devoid of any indication of a notice sent in September of 2016, but it does reference a notice of certification sent in September of 2015. Thus, a simple review of the record reveals that such an assertion must be mistaken. Additionally, Kerr filed his motion to suppress on June 8, 2016, and in that motion did not dispute this timeline: "The warrant that had been issued in Ashland County was issued under case number [2015FO219], which was an ordinance violation case in which default judgment was issued against Mr. Kerr requiring him to pay a fine of $298.50 on July 31, 2015." Moreover, Kerr was arrested on this non-payment warrant on September 27, 2015; the criminal complaint for the Possession of Methamphetamine charge was filed October 7, 2015; and the Clerk of Court certification reflects that the reviewing court was provided the record with respect to that motion in July of 2016—all of which happened well before September of 2016.

Clearly then, it is not as argued in Kerr's brief that "the court failed to send Mr. Kerr any notice that default judgment was entered until over a year later, and after the events giving rise to this case."

[8] The record indicates that "arrest warrant" and "commitment order" are used interchangeably in this case. This may not always be the case and we decline to decide whether a commitment order is always equivalent to an arrest warrant, as that issue was not presented for our review or briefed by the parties. We agree with the State, however, that any difference in this case is not legally significant because the order here, like an arrest warrant, required law enforcement to arrest the subject of the order.

[9] This total reflects a local forfeiture of $263.50, a clerk's fee of $5.00, and a warrant fee of $30.00.

"[t]he balance due has not been paid within the period ordered by the court."

## B. The Arrest

¶9 On September 27, 2015, around midnight, 9-1-1 received a call from a phone number later-identified as Kerr's. When the 9-1-1 operator picked up the call, there was a female yelling, but the operator did not have the opportunity to discover the nature of her distress before the line went dead. When the operator called back, a male answered the phone and the operator heard him say "shut the fuck up." When the operator asked whom the male had been talking to, he responded that he was talking to his cat. He denied that there was a female there and said that there was no problem and that the call had been made by accident.

¶10 The operator ran the number and discovered it was registered to Kerr and that Kerr had an active arrest warrant in Ashland County. The operator then dispatched Officer Matt Ladwig of the City of Bayfield Police Department and Deputy Matt Leino of the Bayfield County Sheriff's Department to Kerr's residence to follow up on the 9-1-1 call, advising them both that Kerr had a warrant for his arrest in Ashland County. When they arrived, they spoke with Kerr and his girlfriend, R.E., and determined that, although the two had had an argument, the 9-1-1 call was an accidental dial. Officer Ladwig then informed Kerr that there was a warrant for his arrest in Ashland County for an unpaid judgment in the amount of $298.50 and placed Kerr under

arrest. He conducted a search incident to arrest and discovered a plastic bag containing a white-colored rock in Kerr's pants pocket, which, after testing, was revealed to be methamphetamine.

## C. The Motion To Suppress

¶11 On October 7, 2015, the State filed its criminal complaint, charging one count of possession of methamphetamine in violation of Wis. Stat. § 961.41(3g)(g).[10]

¶12 On June 8, 2016, prior to trial, Kerr filed a motion to suppress the methamphetamine discovered during the search incident to his arrest.[11] The crux of Kerr's argument is that issuance of the civil municipal arrest warrant violated his due process rights because, contrary to the statutory requirements, "[t]here was no hearing that was noticed to provide [him] an opportunity to be heard on the issue of his ability to pay prior to the issuance of a warrant." Kerr argued that the warrant for this civil municipal ticket never should have been issued, Kerr never should have been arrested, and the methamphetamine never should have been discovered. Therefore, says Kerr, the evidence should be suppressed because it was discovered as a result of an

---

[10] To be clear, these criminal charges were not the basis of the arrest warrant, which issued after Kerr failed to pay a civil municipal forfeiture ticket.

[11] Kerr filed an amended motion to suppress on June 13, 2016. The only revision made was to type (rather than hand-write) the date and time at which the suppression motion would be heard. Otherwise the motions are identical.

unlawful arrest in violation of his constitutional and statutory rights.

¶13 On July 12, 2016, the reviewing circuit court held its first hearing on the motion, at which Officer Ladwig, Deputy Leino, and Kerr all testified. Officer Ladwig and Deputy Leino testified to the facts described above regarding the arrest. They also both testified that they had not attempted to look up the arrest warrant. Kerr testified that he had been unaware of any warrant from Ashland County, and that he had had no hearing about owing any money prior to his arrest on September 27, 2015.

¶14 On September 6, 2016, after further briefing, the reviewing court held its second hearing on the motion, hearing arguments from the parties. Kerr argued that the arrest warrant was facially invalid because, regardless of the statutory basis, the statutory procedures were not followed: defendants cannot be arrested and incarcerated for being poor——there must be some showing of ability to pay. The State argued that exclusion was improper because there was no police misconduct; officers should be able to rely on dispatch——they cannot be the arbiters of whether a court had authority to issue a warrant because they are never in a position to question a court order. The State further argued that, where a warrant is defective but there is no police misconduct, the proper remedy is either a writ of habeas corpus or a civil suit under 42 U.S.C. § 1983. After hearing these arguments, the reviewing court ordered further briefing on the issue of whether a circuit court has competency

9

to proceed as a municipal court pursuant to Wis. Stat. §§ 66.0114, 800.09, and 800.095.

¶15 On October 5, 2016, the reviewing court held its third hearing on the motion, hearing argument from the parties on that issue. Kerr argued that a circuit court could proceed under Wis. Stat. ch. 800, but that, even if this is what the issuing court had done, it still had not adhered to the procedural requirements, and a police officer cannot reasonably rely on a warrant that has no statutory basis. The State informed the reviewing court that the arrest warrant was issued pursuant to Wis. Stat. § 778.09,[12] and argued that suppression is not designed to correct judicial misconduct and would have no deterrent effect here. Kerr responded that police officers cannot be allowed to avoid suppression on a hear-no-evil-see-no-evil basis by not looking at the warrant.

¶16 On October 31, 2016, the reviewing court issued its decision and order granting Kerr's motion to suppress. It concluded that the issuing court had authority to issue the

---

[12] Wisconsin Stat. § 778.09 states as follows:

Judgment, costs, commitment of defendant. Where judgment is recovered pursuant to this chapter it shall include costs and direct that if the judgment is not paid the defendant, if an individual, shall be imprisoned in the county jail for a specified time, not exceeding 6 months, or until otherwise discharged pursuant to law. The commitment shall issue, as in ordinary criminal actions, and the defendant shall not be entitled to the liberties of the jail.

§ 778.09.

warrant because it has general jurisdiction under Article VII, Section 8 of the Wisconsin Constitution and Wis. Stat. § 753.03 to impose and collect municipal forfeitures under Wis. Stat. §§ 66.0114(1)(c), 800.09, 800.095, 345.47(1)(a), and/or 778.10. It nonetheless concluded that the arrest warrant was defective because the issuing court did not comply with statutory procedural requirements in issuing the warrant. In this regard, the reviewing court took the issuing court to task for what it perceived to be "an institutional or administrative disregard for the law governing civil commitments."[13] The reviewing court then acknowledged that the officers engaged in no wrongdoing, also noting that "neither the defendant nor the State alleges even the slightest hint of misconduct or wrongdoing by law enforcement." It nonetheless concluded, after discussion of

---

[13] The reviewing court's written decision makes clear, however, that, instead of relying on the facts of record, the court rested its conclusions on its own familiarity with how the issuing court "issues civil commitments [and how] the error in this case results in several, or dozens or hundreds of arrest warrants being issued in complete disregard for the applicable law." The court stated:

> While there is no reason in this case to assume intentional malfeasance on the issuing court, the record from the [issuing county] case shows an institutional or administrative disregard for the law governing civil commitments. While the record does not reflect this, I am administratively aware that [the issuing county] follows the procedure that occurred in this case in almost all of its civil nonpayments. In [the issuing county], nonpayment of a civil forfeiture generally means summary issuance of a civil commitment. There may be hundreds of similar commitments of record.

11

State v. Hess, 2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568, in light of State v. Scull, 2015 WI 22, 361 Wis. 2d 288, 862 N.W.2d 562, that exclusion of the evidence was proper because the deterrent purpose of the exclusionary rule is served where the judicial misconduct is systemic.

¶17 On December 9, 2016, the State appealed.[14] On July 10, 2017, the State petitioned this court for bypass of the court of appeals. On October 17, 2017, the State's petition for bypass was granted.

## II. STANDARD OF REVIEW

¶18 "'Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact.'" State v. Tullberg, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120 (quoting State v. Robinson, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463). "When presented with a question of constitutional fact, this court engages in a two-step inquiry. First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." Id., ¶27 (citations omitted).

¶19 The interpretation and application of a constitutional provision are questions of law that we review de novo. See, e.g., Black v. City of Milwaukee, 2016 WI 47, ¶21,

---

[14] The reviewing court has suspended proceedings pending the outcome of this appeal.

12

369 Wis. 2d 272, 882 N.W.2d 333 (citing Appling v. Walker, 2014 WI 96, ¶17, 358 Wis. 2d 132, 853 N.W.2d 888). "When interpreting constitutional provisions and amendments, we look to intrinsic as well as extrinsic sources." State v. Williams, 2012 WI 59, ¶15, 341 Wis. 2d 191, 814 N.W.2d 460 (citing Buse v. Smith, 74 Wis. 2d 550, 568, 247 N.W.2d 141 (1976)). In particular, we look to (1) the plain meaning of the words in the context used; (2) the historical analysis of the constitutional debates that the court may reasonably presume were known to the framers; (3) the prevailing practices when the provision was adopted; and (4) the earliest interpretation of the provision by the legislature, as manifested in the first law passed following its adoption. Id.

### III. ANALYSIS

¶20 There is no dispute that the exclusionary rule applies in Wisconsin. See Mapp v. Ohio, 367 U.S. 643 (1961); Conrad v. State, 63 Wis. 2d 616, 636, 218 N.W.2d 252 (1974). The parties before us, however, argue two competing views of when evidence must be suppressed under the exclusionary rule. The State's view is that evidence is suppressed only where suppression will likely serve to deter future police misconduct. This is, and has been, the view of the majority of this court. See Scull, 361 Wis. 2d 288, ¶¶47-61 (Roggensack, J., concurring, joined by Crooks, Ziegler, and Gableman, JJ.). Kerr's view is that evidence may be suppressed either where suppression serves to deter future police misconduct or where it serves to preserve

"judicial integrity." The view that "judicial integrity" is a standalone justification for suppression under the exclusionary rule is error, as this view has not garnered favor among a majority of this court, nor of the United States Supreme Court.[15]

¶21 In fact, the Supreme Court recently reiterated that "[t]he rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, 236-37 (2011); see also Elkins v. United States, 364 U.S. 206, 217 (1960) ("Its purpose is to deter . . . by removing the incentive to disregard it."). And this purpose is punitive, not remedial. See, e.g., United States v. Calandra, 414 U.S. 338, 347 (1974) ("The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . ."); Elkins, 364 U.S. at 217 ("The rule is calculated to prevent, not to repair."). Thus, the singular

---

[15] When "judicial integrity" has been discussed in relation to the suppression of evidence, it has been tethered to the taint of police misconduct. See, e.g., Stone v. Powell, 428 U.S. 465, 485 (1976) (citation omitted) ("Although our decisions often have alluded to the 'imperative of judicial integrity,' they demonstrate the limited role of this justification in the determination whether to apply the rule in a particular context."); Terry v. Ohio, 392 U.S. 1, 12-13 (1968) (citation omitted) ("The rule also serves another vital function——'the imperative of judicial integrity.' . . . A ruling admitting evidence in a criminal trial, we recognize, has the necessary effect of legitimizing the conduct which produced the evidence . . . ."); State v. Tompkins, 144 Wis. 2d 116, 133, 423 N.W.2d 823 (1988) ("The protection of rights and the preservation of judicial integrity depend in reality on the deterrent effect of the exclusionary rule.").

purpose of the exclusionary rule is to deter police misconduct,[16] and the exclusionary rule does not apply in order to preserve judicial integrity or to correct judicial error.[17]

---

[16] In so concluding we consider whether to overrule Hess, 327 Wis. 2d 524.  The State argues that Hess should be overruled because its view of "judicial integrity" as a standalone justification for suppression is a significant departure from United States Supreme Court precedent.  Kerr argues that Hess should not be overruled because its discussion of judicial integrity as a standalone justification for suppression was correct.  We conclude that Hess need not be overruled because the lead opinion's view of "judicial integrity" as a standalone justification for suppression under the exclusionary rule did not garner the support of a majority of the court.

Justice Prosser authored the lead opinion, joined by then-Chief Justice Abrahamson and Justice A.W. Bradley; Justice Ziegler concurred and filed an opinion that did not adopt the "judicial integrity" rationale of the lead opinion; Justice Gableman dissented and filed an opinion that then-Justice Roggensack joined, which specifically rejected "judicial integrity" as a standalone rationale; and Justice Crooks did not participate in the case.  Justice Crooks did, however, participate in State v. Scull, 2015 WI 22, 361 Wis. 2d 288, 862 N.W.2d 562, where he joined the concurring majority in rejecting judicial integrity as a standalone rationale.  Thus, Hess has no precedential value that requires reconsideration in this case.

[17] In fact, in general, the exclusionary rule does not even apply to deter mistakes made by judicial employees:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.  Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.
>
> Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or

(continued)

15

¶22 Moreover, Supreme Court precedent establishes that the manner in which the warrant was issued by the court and executed by law enforcement in this case does not afford suppression under the exclusionary rule. As noted above, see supra ¶21, for the exclusionary rule to apply, there must have been some police misconduct. Although Kerr argues that the officers' failure to look at the warrant itself constitutes such misconduct, this view is incorrect. As a practical matter, officers should be able to rely on dispatch in the same way they are able to rely on their computer records. See Arizona v. Evans, 514 U.S. 1, 14-16 (1995). Relatedly, absent some evidence in the record to the contrary, dispatch personnel are not "adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime." Id. at 15. Additionally, to the extent that looking at a warrant before executing it may be best practice, the officers' conduct here is at most negligent, and isolated negligence is not "misconduct" for the purposes of the exclusionary rule. Herring v. United States, 555 U.S. 135, 146-47 (2009). Thus, the officers here did not engage in any misconduct that renders the evidence suppressible under the exclusionary rule.

---

magistrate. . . . Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions.

United States v. Leon, 468 U.S. 897, 916-17 (1984); see also Herring v. United States, 555 U.S. 135, 142 (2009).

16

¶23 The parties also make arguments regarding the good-faith exception, which applies when an "officer's conduct is objectively reasonable, [because] 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances.'" United States v. Leon, 468 U.S. 897, 919-20 (1984) (quoting Stone v. Powell, 428 U.S. 465, 539-40 (1976) (White, J., dissenting)). In Wisconsin, we have adopted the good-faith exception. See State v. Eason, 2001 WI 98, ¶52, 245 Wis. 2d 206, 629 N.W.2d 625 ("[A] good faith exception for objective, reasonable reliance upon a search warrant does not offend the Wisconsin Constitution [because in that situation,] applying the exclusionary rule will have no deterrent effect."). But, because the exclusionary rule applies to deter police misconduct, and there is no police misconduct here, the exclusionary rule does not apply; the good-faith exception thus, also need not be further analyzed and the evidence is not excluded.

## IV. CONCLUSION

¶24 Our overarching inquiry in this case is whether the circuit court erred in granting Kerr's motion to suppress. Fundamental to our analysis is whether evidence discovered during a search incident to arrest is properly suppressed under the exclusionary rule when there is no police misconduct. We conclude that suppression is not appropriate because the sole

17

purpose of the exclusionary rule is to deter police misconduct, and there is no police misconduct here. Neither judicial integrity nor judicial error is a standalone basis for suppression under the exclusionary rule.[18] We therefore conclude that the circuit court's grant of Kerr's motion to suppress on the basis of judicial integrity is error.

¶25 Accordingly, we reverse the Bayfield County circuit court.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded.

---

[18] In so concluding, we consider whether to overrule Hess, 327 Wis. 2d 524. We conclude that Hess need not be overruled because the lead opinion's view of "judicial integrity" as a standalone justification for suppression under the exclusionary rule did not garner the support of a majority of the court; as such, it has no precedential value that requires reconsideration in this case.

¶26 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I, of course, join the opinion that I wrote for the majority. I write separately to address issues that three of the four members of the majority conclude are also relevant.

¶27 The reviewing circuit court in this case took issue with the manner in which the neighboring circuit court issued the warrant.[1] It concluded that the neighboring court issued this warrant contrary to statutory provisions, that the issuing court did so on a regular basis, that all such warrants were void ab initio, and that, therefore, this case represented "an institutional or administrative disregard for the law governing civil commitments." The reviewing court, thus, suppressed the evidence because of "judicial error on a wide administrative level," concluding that "'judicial integrity' is vital enough to justify exclusion of evidence when the issuing court's arrest warrant was invalid ab initio."

¶28 This case cannot be so easily resolved by relying on the issuing court's alleged statutory violation, because neither the facts of record nor the plain language of the applicable statutes support that conclusion. Relatedly, while it may be tempting to do so, this case cannot be resolved by relying on my concurrence in State v. Hess, 2010 WI 82, 327 Wis. 2d 524, 785

---

[1] The Honorable Robert E. Eaton of Ashland County issued the warrant (the "issuing court"), but, because the arrest occurred in Bayfield County, the Honorable John P. Anderson of Bayfield County presided over the motion to suppress and reviewed the warrant (the "reviewing court").

N.W.2d 568, because the arrest warrant was not void ab initio here, where the issuing court had authority to issue it.[2]

¶29 Accordingly, I respectfully concur.

## I. FACTS OF RECORD

¶30 Recall that the record regarding the issuance of the warrant in this case is rather lean. This record reflects that, on June 16, 2015, Kerr was mailed a citation for disorderly conduct, in violation of City of Ashland ordinance 201.03. This citation notified Kerr to appear, if he so chose, at 10:00 a.m. on July 21, 2015. He did not. This record also reflects that, on July 21, 2015, when Kerr failed to appear, the court entered a default judgment in the amount of $263.50 with 60 days to pay, and that on July 31, 2015, the clerk sent notice of the default judgment to Kerr (although neither the judgment nor the notice is in the record). On September 22, 2015, 60 days after default judgment was entered, the circuit court issued an arrest warrant for Kerr to "detain [him] in custody for 90 days or until

---

[2] For an egregious example of abuse of power see State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, 363 Wis. 2d 1, 866 N.W.2d 165. The facts of this case, however, are dramatically different. And regardless, given the forward-looking nature of the exclusionary rule, it is incapable of functioning as a remedy. Here it cannot, and never has. While it may be tempting to judicially create a remedy for these wrongful searches and seizures, repurposing the exclusionary rule to be a remedy, rather than a tool to deter police misconduct, will not fix the problem and will, in fact, create downstream problems of its own. In fact, it would disband the exclusionary rule in its entirety. Stated differently, it turns a forward-facing pedagogical tool backward into a purported remedy.

$298.50[3] is paid, or until the person is discharged by due course of law." This warrant was issued on the basis that "the balance due has not been paid within the period ordered by the court."

¶31 There is also very little in the record created by the reviewing court to support its conclusion that the issuing court issued warrants in a similar manner on a regular basis. In fact, the record regarding the review of this singular warrant reflects that it is largely the reviewing court's own opinion and personal belief, rather than fact finding, that this procedure reflects "an institutional or administrative disregard for the law governing civil commitments":

> [A]s already known to this Court due to its familiarity with how [the issuing county] issues civil commitments, the error in this case results in several, or dozens or hundreds of arrest warrants being issued in complete disregard for the applicable law.
>
> In isolated cases of judicial malfeasance, exclusion will not likely deter future conduct, as the conduct is often remarkably isolated. Here the conduct is not isolated and may be the rule, not the exception. Deter[r]ence certainly is a greater consideration under these facts. . . .
>
> While there is no reason in this case to assume intentional malfeasance on the issuing court, the record from the [issuing county] case shows an institutional or administrative disregard for the law governing civil commitments. While the record does not reflect this, I am administratively aware that [the issuing county] follows the procedure that occurred in this case in almost all of its civil

---

[3] This total reflects a local forfeiture of $263.50, a clerk's fee of $5.00, and a warrant fee of $30.00.

3

**nonpayments.** In [the issuing county], nonpayment of a civil forfeiture generally means summary issuance of a civil commitment. There may be hundreds of similar commitments of record.

(Emphasis added.) Additionally, the record reflects that the reviewing court acknowledged that there is not "even the slightest hint of misconduct or wrongdoing by law enforcement in this matter," and that it concluded that the issuing court "had statutory authority to issue a bench warrant under Wis. Stat. § 800.095(1)(b)1 for Kerr's arrest for failure to pay the fine imposed."

¶32 Thus, the reviewing court's decision to suppress the evidence was based solely on its view that the neighboring court issued this warrant without following statutory procedures, that the neighboring court did so on a regular basis, and that, because of that systemic failure, this warrant was "invalid ab initio." This view, however, is not supported by the facts of record; rather, it is based on the reviewing court's own understanding of a neighboring county's practice. Even assuming, however, that there were facts of record to support the reviewing court's conclusion that arrest warrants in civil forfeiture cases were regularly issued in this manner, and that doing so fails to comply with Wis. Stat. § 800.095(1)(b)2.,[4] that procedural defect does not render the warrant "void ab initio."

## II. DISTINGUISHING "VOID AB INITIO"

¶33 Warrants may be defective for a variety of reasons. Most typically, a warrant is later challenged because of a

---

[4] But see Part III.

4

defect, for example, lack of probable cause or procedural irregularity, but not because it was issued without authority. And warrants are deemed "void ab initio" only when the person issuing the warrant lacks authority to ever issue that warrant in that type of case. Thus, when a judge has the authority to issue a warrant, as is the case here, but fails to properly adhere to prescribed requirements,[5] that warrant may be defective, but it is not void ab initio.

¶34 In other words, the type of defective warrant that issues when a judge fails to follow statutory procedural requirements in issuing it differs from the type of defective warrant that issues when a judge lacks authority to issue it: the former, although defective, is not void ab initio; the latter is per se void ab initio. The reality of this distinction is evident from the fact that, if there were no distinction, there would be no place for the exclusionary rule or its companion good-faith exception. In all exclusionary rule cases, the warrant is defective, but nonetheless the evidence discovered in a search incident to arrest is upheld unless there is police misconduct. Notably, the reviewing court stated that there is not "even the slightest hint of misconduct or wrong doing by law enforcement in this matter." Thus, although I assume without deciding that the reviewing court correctly

---

[5] For the purposes of this section we assume without deciding that the issuance of the arrest warrant failed to follow the requirements of Wis. Stat. § 800.095(1)(b)2. But see Part III.

concluded that the warrant was defective, it incorrectly used the term "invalid ab initio" because it is clear from the reviewing court's decision——which concluded that the issuing court "had statutory authority to issue a bench warrant under Wis. Stat. § 800.095(1)(b)1"——that its grant of Kerr's motion to suppress was based upon the "institutional or administrative disregard for the law governing civil commitments," not a lack of court authority to issue this type of warrant.

### A. Authority To Issue

¶35 I agree with the reviewing court that the issuing court had the authority to issue this warrant under Wis. Stat. § 800.095. Chapter 753 of the Wisconsin Statutes governs the circuit courts. Under Wis. Stat. § 753.03, "circuit courts have power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court . . . ." § 753.03 (emphasis added); see also Wis. Const. art. VII, § 8 ("Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state . . . .").

¶36 Chapter 755 of the Wisconsin Statutes governs municipal courts. Under Wis. Stat. § 755.045, a "municipal court has exclusive jurisdiction over an action in which a municipality seeks to impose forfeitures for violations of municipal ordinances of the municipality that operates the court . . . ." § 755.045(1) (emphasis added); see also Wis. Const. art. VII, § 14 ("All municipal courts shall have uniform

6

jurisdiction limited to actions and proceedings arising under ordinances of the municipality in which established.").

¶37 Chapter 800 of the Wisconsin Statutes promulgates "Municipal Court Procedure[s]," and where, as here, Wis. Stat. § 800.095 operates to impose a forfeiture for violation of a municipal ordinance, authority to act under § 800.095 would be exclusive to a municipal court if a municipal court has been established under Wis. Stat. § 755.01. See Wis. Stat. § 755.045. However, where, as here, there is no municipal court, the circuit court of the county in which the municipality is located has authority vis-à-vis its general jurisdiction to resolve violations of municipal ordinances pursuant to Chapter 800.

¶38 Thus, the reviewing court is correct that (1) "[t]here is no question that the [issuing court], as a court of general jurisdiction, has the constitutional and statutory authority to hear and process municipal citations," and (2) the issuing court "had statutory authority to issue a bench warrant under Wis. Stat. § 800.095(1)(b)1 for Kerr's arrest for failure to pay the fine imposed."

B. Procedural Defects

¶39 The reviewing court errs, however, when it concludes that the warrant here was "invalid ab initio" on the basis that the issuing court issued the warrant in violation of the statutory procedural requirements of Wis. Stat. § 800.095. Kerr, who agrees with this conclusion, and the State, which concedes this point, thus also err. In particular, the State

7

inaccurately cites my concurrence in Hess for the proposition that "[a] warrant can be void ab initio when the judge or magistrate lacked legal authority to issue any warrant, or when a mandatory condition precedent to the court's authority to issue a warrant was not met from the outset." Procedural defects (the latter) are different from lack of authority to issue the warrant in the first instance (the former). To conflate authority to issue with procedural defects is error, and that error is aptly demonstrated in a case where, as here, the alleged defect is procedural in nature, and not related the issuing court's authority. Again, if lack of authority to issue and procedural defect were both to result in a warrant being deemed void ab initio, the exclusionary rule (and its good-faith exception) would be read out of existence because every exclusionary rule case is analyzed in light of a defective warrant, yet under the exclusionary rule the evidence discovered in a search incident to arrest is not suppressed unless there is police misconduct because the good-faith exception otherwise applies.

1. Hess, 327 Wis. 2d 524, ¶¶71-74 (Ziegler, J., concurring)

¶40 In Hess, I concurred on the basis that exclusion of the evidence was proper because the warrant was "void ab initio."[6] I cited three cases for the principle that evidence discovered as a result of a warrant void ab initio must be

---

[6] The parties, and the reviewing court, have used the term "void ab initio" rather loosely in this case.

8

excluded. See Hess, 327 Wis. 2d 524, ¶71 (Ziegler, J., concurring) (citing State v. Kriegbaum, 194 Wis. 229, 215 N.W. 896 (1927), State v. Grawien, 123 Wis. 2d 428, 430-31, 367 N.W.2d 816 (Ct. App. 1985), and State v. Loney, 110 Wis. 2d 256, 259-60, 328 N.W.2d 872 (Ct. App. 1982)). I continue to agree with this principle.

¶41 In these three cases, however, the warrant was held void ab initio because the issuing judicial officer lacked authority to issue the warrant in question. See Kriegbaum, 194 Wis. at 231-32 (concluding that the warrant was void ab initio because justices of the peace "can exercise only the judicial power conferred upon [them] by the statutes" and the statutes did not grant authority "to issue a warrant for the search of a person"); Grawien, 123 Wis. 2d at 430-31 (concluding that the warrant was void ab initio because "the state conceded that [the commissioner] was not authorized to issue search warrants pursuant to sec. 757.69(1)"); Loney, 110 Wis. 2d at 259-60 (concluding that the warrant was void ab initio because the power of the court commissioner to issue warrants, "must be conferred by express delegation" and "the order appointing the commissioner fails to delegate authority to issue warrants"). Here, these cases are inapplicable because, as noted above, see supra ¶¶35-38, the issuing judge in this case had the authority to issue the warrant.

2. Distinguishing authority to act from failure to act

¶42 I also noted in my Hess concurrence that "[w]hile a per se void ab initio warrant is always defective, a defective

9

warrant is not always per se void ab initio." 327 Wis. 2d 524, ¶73 (Ziegler, J., concurring). As noted above, see supra ¶¶33-34, a warrant issued by someone with authority that is later-found defective for failure to fulfill a requirement such as probable cause, or deficient oath or affirmation——both of which are also requirements for a warrant to issue——does not render the warrant void ab initio and require exclusion of the evidence. Again, this is evident from the fact that, if it did, there would be no need for the exclusionary rule or its companion good-faith exception because every exclusionary rule case involves a defective warrant. Similarly, a warrant that is later-found defective for failure to adhere to statutory procedural requirements does not render the warrant void ab initio. Again, this is evident from the fact that there is a difference between a lack authority to issue and a failure to fulfill procedural requirements.

¶43 Thus, while it may be tempting to conclude that this warrant is void ab initio by citing to cases which involved a justice of the peace or court commissioners who had no authority in the first instance to issue the warrant, that line of reasoning is inapplicable because the judge here did have authority to issue the warrant. Compare supra ¶41 (discussing Kriegbaum, 194 Wis. 229, Grawien, 123 Wis. 2d 428, and Loney, 110 Wis. 2d 256) with supra ¶¶35-38. In other words, the warrants in Kriegbaum, Loney, and Grawien were void ab initio because the person who issued the warrant could never issue the

10

warrant under any circumstances, but that is not what we have here.

¶44 The difference between failing to comply with the provisions of Wis. Stat. § 800.095(1)(b)2. and lacking authority to issue the warrant is a difference that is significant because Kriegbaum and its progeny stand for the proposition that, when the person issuing the warrant had no authority to do so, that warrant is void ab initio and evidence may be excluded on that basis. See Hess, 327 Wis. 2d 524, ¶30 ("[Loney and Grawien] together with Kriegbaum, support the conclusion that exclusion is an appropriate remedy where evidence was obtained by a warrant [that] issued by a magistrate who lacked the authority to issue the warrant."); id., ¶29 ("Because the circuit court had no authority to issue the warrant it did, exclusion is an appropriate remedy for evidence obtained as a result of that warrant.").

¶45 Here, because the judge did have authority to issue the warrant, the warrant cannot be deemed void ab initio. Instead, the type of defect at issue here is akin to the type of defect that arises when a warrant is challenged post-search or post-arrest and is found to lack probable cause, oath or affirmation, and/or particularity; in those circumstances, the warrant is defective as a result of a judge's failure to adhere to specific requirements before issuing a warrant. Such later-discovered defects do not, however, render the warrant void ab initio.

11

### III. PLAIN LANGUAGE OF THE APPLICABLE STATUTES[7]

¶46 As discussed above, see supra ¶31, the reviewing court concluded that the issuing court "failed to comply with the requirements under Wis. Stat. § 800.095(1)(b)2," and that, therefore, "how [the neighboring county] issues civil commitments . . . results in several, or dozens or hundreds of arrest warrants being issued in complete disregard for the applicable law." Because of that "systemic" failure, the reviewing court determined that "[h]ere the conduct is not isolated and may be the rule, not the exception. Deter[r]ence certainly is a greater consideration under these facts." (Emphasis added.) Thus, it suppressed the evidence discovered incident to arrest because "'judicial integrity' is vital enough to justify exclusion of evidence when the issuing court's arrest warrant was invalid ab initio."

---

[7] The interpretation and application of a statute present questions of law that this court reviews de novo. See, e.g., State v. Dorsey, 2018 WI 10, ¶23, 379 Wis. 2d 386, 906 N.W.2d 158 (citing State v. Alger, 2015 WI 3, ¶21, 360 Wis. 2d 193, 858 N.W.2d 346). When interpreting a statute, we begin with the language of the statute, and, "[i]f the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning is not plain, we look to the context in which the statute is used, "in relation to the language of surrounding or closely-related statutes," and may consult the scope and purpose of the statute where they are ascertainable from the text and structure of the statute itself. Id., ¶¶46, 48. Resort to legislative history and other extrinsic sources is traditionally inappropriate "in the absence of a finding of ambiguity," "although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." Id., ¶51.

¶47 In other words, the circuit court granted Kerr's motion to suppress the evidence discovered incident to arrest because it concluded that there was not just procedural malfeasance with respect to this one warrant, but rather with respect to "several, or dozens or hundreds of arrest warrants," and, therefore, a greater need for deterrence, considering the pervasive systemic nature of the issuance of these warrants in violation of the procedural requirements of the statute. While not fundamental to the conclusion that we reach today, I thus also consider whether the plain language of the applicable statutes supports the strength of the reviewing court's conviction that the issuing court's actions were a violation of the statute.

## A. Default Judgment

¶48 The reviewing court's conclusion that the issuing court "may have failed to issue or render a written default judgment in 2015" is subject to question. Entry of default judgment in civil forfeiture cases is governed by Wis. Stat. §§ 800.08 and 800.09. Section 800.08 provides, in relevant part, as follows: "If a defendant does not appear at trial, the court may enter a default judgment under s. 800.09." § 800.08(5). Section 800.09 provides, in relevant part, as follows: "If the defendant is not present, the court shall ensure that the information is sent to the defendant by mail." § 800.09(1g).

¶49 Here, the parties do not dispute that Kerr did not appear on July 21, 2015; thus, entry of default judgment was

13

proper. See Wis. Stat. § 800.08(5). As noted above, the certified record from the issuing court reflects that default judgment was entered on July 21, 2015. Additionally, the record is completely devoid of any indication that the notice sent on July 31, 2015, was somehow deficient. Consequently, there is nothing in the record to indicate that the notice Kerr presumably received[8] did not properly advise him of the consequences of failure to timely pay or appear, including "imprisonment" and that "the defendant should notify the court if he or she is unable to pay the judgment because of poverty."[9] See Wis. Stat. § 800.09(1g). The reviewing court concluded in fact that the standard default judgment form contained the information required to be given by statute.[10] Thus, there is nothing in the record to support the reviewing court's conclusion that the issuing court "may have failed to issue or render a written default judgment in 2015."

---

[8] The statute's language does not impose any requirement to ensure that the defendant receive the notice; rather, the court need only "ensure that the information is sent to the defendant by mail." Wis. Stat. § 800.09(1g). In this regard, I note that the record indicates that the address to which the ticket, and presumably the notice of default judgment, was sent is different from the address where Kerr was arrested. This difference does not affect my analysis, however, as a court is not required to verify that the address of record is accurate and there is nothing in the record to indicate that the notices were not mailed as required or that they were returned to the court.

[9] Kerr never made any such request to the court.

[10] The reviewing court said: "The standard default judgment form, which was eventually used in this case, contains the information required to be provided in writing to a defendant if he or she is not in court when judgment is entered, pursuant to §§ 345.47 and 800.09(1g)."

14

## B. Arrest Warrant

¶50 The reviewing court's conclusion that the issuing court "failed to comply with the requirements under Wis. Stat. § 800.095(1)(b)2." in issuing the arrest warrant is also subject to question. Issuance of an arrest warrant in civil forfeiture cases is governed by Wis. Stat. § 800.095. Section 800.095 provides, in relevant part, as follows:

(1) If the defendant fails to pay a monetary judgment ordered by the court, the court may order . . .

(b) 1. That the defendant be imprisoned until the forfeiture, assessments, surcharge, and costs are paid. If the court orders imprisonment under this subdivision, all of the following apply:

a. The maximum period of imprisonment shall be 90 days for any one judgment, and the defendant shall receive credit against the amount owed at the rate of at least $50 for each day of imprisonment, including imprisonment following an arrest but prior to the court making a finding under subd. 2.

b. The court may impose a term of imprisonment under this subdivision that is either concurrent with or consecutive to any other term of imprisonment imposed at the same time or any term of imprisonment imposed by any court.

2. No defendant may be imprisoned under subd. 1. unless the court makes one of the following findings:

a. Either at sentencing of thereafter, that the defendant has the ability to pay the judgment within a reasonable time. If a defendant meets the criteria in s. 814.29(1)(d), the defendant shall be presumed unable to pay under this subsection and the court shall either suspend or extend payment of the judgment or order community service.

b. The defendant has failed, without good cause, to perform the community service authorized under this subsection or s. 800.09.

15

c. The defendant has failed to attend an indigency hearing offered by the court to provide the defendant with an opportunity to determine whether he or she has the ability to pay the judgment.

d. The defendant has failed, without good cause, to complete an assessment or treatment program related to alcohol or drugs that was ordered in lieu of a monetary forfeiture.

§ 800.095(1)(b)1.-2.

¶51 The plain language of this statute contemplates imprisonment before a subd. (b)2. hearing is held when it states that imprisonment may be imposed up to "90 days for any one judgment, and the defendant shall receive credit against the amount owed at the rate of at least $50 for each day of imprisonment, <u>including imprisonment following an arrest but prior to the court making a finding under subd. 2.</u>" § 800.095(1)(b)1.a. (emphasis added). Thus, while § 800.095(1)(b)2. indeed provides that no defendant may continue to be imprisoned under subd. (b)1. unless the court makes certain findings, subd. (b)1. does seem to permit "imprisonment following an arrest but prior to the court making a finding under subd. 2."

¶52 As an initial matter, Kerr has not challenged Wis. Stat. § 800.095(1)(b)1.a. in any way; rather, Kerr rests his argument on the court's failure to determine his ability to pay the forfeiture imposed prior to arrest. While that may be a good practice, it is less than clear that the statutes require it because, as noted above, see supra ¶¶50-51, this argument is not necessarily borne out by the plain language of the applicable statutes. Additionally, the facts of this case

16

demonstrate precisely why an arrest and/or imprisonment prior to the court making a finding under § 800.095(1)(b)2. may be both necessary and prudent: Kerr was entirely absent. He was never present for the court to ask him whether he could pay the forfeiture, nor did Kerr ever ask for an indigency hearing. Nothing in the record indicates that the notice Kerr presumably received was deficient in so advising him, and, in fact, the reviewing court stated that he received proper notice. See supra ¶49. Thus, the issuing court's ability to resolve the ticket by arrest and/or imprisonment under subd. (b)1., followed by findings under subd. (b)2. is not definitively prohibited. See Wis. Stat. § 800.095(1)(b)1.a.

¶53 In sum, even if the facts of record demonstrated that the issuing court regularly proceeded in the manner described above, it is not clear that such actions violated the plain language of the applicable statutes. First, entry of default judgment pursuant to Wis. Stat. § 800.09(5) was proper because, although the ticket issued to Kerr did not require his appearance in court, failure to appear at the time designated on the ticket endows the court with authority to enter default judgment. Second, the record reflects that notice of default judgment was sent by mail pursuant to Wis. Stat. § 800.09(1g), and the record is devoid of any indication that the notice might have been lacking; in fact, the court stated that proper notice was given. Third, Kerr's assertion that suppression is warranted because "no hearing was noticed to provide [him] with an opportunity to be heard on the issue of ability to pay prior

17

to the issuance of a warrant" is not clearly supported by the statute; rather, Wis. Stat. § 800.095(1)(b)1.a. permits "imprisonment following an arrest but prior to the court making a finding under subd. 2." And this might make sense in cases such as this one when no indigency hearing has been requested by the defendant, and, where, at the only court appearance held, the defendant did not appear. In such cases, the statute's language does not appear to always place the onus on the court to set an indigency hearing and ask questions of a non-appearing defendant.[11] It might also make sense to give notice again and set an order to show cause, but the statute is less than clear that that is always required. We need not decide this today, however, as it is not fundamental to our decision.

IV. CONCLUSION

¶54 I, of course, join the opinion that I wrote for the majority. I write separately to address issues that three of the four members of the majority conclude are also relevant.

¶55 The reviewing circuit court in this case took issue with the manner in which the issuing circuit court issued the warrant. It concluded that the neighboring court issued this warrant contrary to statutory provisions, that the issuing court did so on a regular basis, that all such warrants were void ab initio, and that, therefore, this case represented "an

_____

[11] The statute appears to place the onus on the defendant to request that hearing. See Wis. Stat. § 800.09(1g) ("[T]he defendant should notify the court if he or she is unable to pay the judgment because of poverty . . . .").

18

institutional or administrative disregard for the law governing civil commitments." The reviewing court, thus, suppressed the evidence because of "judicial error on a wide administrative level," concluding that "'judicial integrity' is vital enough to justify exclusion of evidence when the issuing court's arrest warrant was invalid ab initio."

¶56 This case cannot be so easily resolved by relying on the issuing court's alleged statutory violation, because neither the plain language of the applicable statutes nor the facts of record support the conclusion that the issuing court acted wrongfully. Relatedly, this case cannot be resolved by relying on my concurrence in Hess, 327 Wis. 2d 524, because the arrest warrant was not void ab initio here, where the issuing court had authority to issue it.

¶57 Accordingly, I respectfully concur.

¶58 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK and Justice MICHAEL J. GABLEMAN join this concurrence. I am also authorized to state that Justice DANIEL KELLY joins footnote 2.

19

¶59 ANN WALSH BRADLEY, J. *(dissenting).* When a court issues a warrant without regard for any legislatively mandated statutory safeguards, the use of evidence discovered through execution of such a warrant calls into question the fairness of the process. "Public confidence in the fair and honorable administration of justice, upon which ultimately depends the rule of law," is a "transcending value at stake." Sherman v. United States, 356 U.S. 369, 380 (1958) (Frankfurter, J., concurring).

¶60 As was explained in State v. Hess, 2010 WI 82, ¶¶64-65, 327 Wis. 2d 524, 785 N.W.2d 568, even though the purpose of the exclusionary rule is primarily to deter police misconduct, a "secondary consideration" of the rule is to preserve judicial integrity. I conclude that judicial integrity remains an independent basis for the application of the exclusionary rule and, like the circuit court, I would apply it here.

¶61 For well over a half century, the rationale of judicial integrity has coursed through exclusionary rule jurisprudence in both this court and the United States Supreme Court. In the seminal case of Terry v. Ohio, the United States Supreme Court wrote that in addition to deterring police misconduct, the exclusionary rule "also serves another vital function——'the imperative of judicial integrity.'" 392 U.S. 1, 12-13 (1968) (citing Elkins v. United States, 364 U.S. 206, 222 (1960)).

¶62 Subsequently, the Supreme Court reaffirmed that although the primary purpose of the exclusionary rule is to

1

deter police misconduct, judicial integrity is a "relevant, albeit subordinate factor" that may require exclusion of evidence in "unusual circumstances." United States v. Janis, 428 U.S. 433, 458 n.35 (1976); United States v. Leon, 468 U.S. 897, 921 n.22 (1984).

¶63 Davis v. United States, 564 U.S. 229 (2011), altered this analysis. In Davis, the Supreme Court departed from judicial integrity and determined that pursuant to the federal Constitution, the "sole purpose of the exclusionary rule is to deter misconduct by law enforcement." Id. at 246.

¶64 However, this court need not follow the United States Supreme Court's departure. "[W]e retain the right to interpret our constitution to provide greater protections than its federal counterpart." State v. Dubose, 2005 WI 126, ¶41, 285 Wis. 2d 143, 699 N.W.2d 582. This court "will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizens' liberties ought to be afforded." State v. Knapp, 2005 WI 127, ¶59, 285 Wis. 2d 86, 700 N.W.2d 899 (quoting State v. Doe, 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977)). To provide true meaning to our constitution's protections against unreasonable searches and seizures, it is appropriate to do so here.

¶65 There is ample support in our prior case law for maintaining judicial integrity as an independent basis for applying the exclusionary rule pursuant to the Wisconsin

2

Constitution. In State v. Felix, an opinion decided post-Davis and based in part on the Wisconsin Constitution, this court referenced the dual purposes of the exclusionary rule, including judicial integrity. 2012 WI 36, ¶39, 339 Wis. 2d 670, 811 N.W.2d 775. Similarly, in Hess we referenced both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution.[1] See Hess, 327 Wis. 2d 524, ¶¶20, 33. Likewise, in State v. Eason, the court referred to the exclusionary rule's dual purpose of deterring police misconduct and ensuring judicial integrity while explicitly basing its conclusion on the Wisconsin Constitution. 2001 WI 98, ¶¶3, 31 n.10, 245 Wis. 2d 206, 629 N.W.2d 625.

¶66 The consideration of judicial integrity in the application of the exclusionary rule also fulfills the "important purposes" of "enabl[ing] the judiciary to avoid the taint of partnership in official lawlessness" and "assur[ing] the people——all potential victims of unlawful government

---

[1] The Fourth Amendment to the United States Constitution sets forth:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Article I, Section 11 of the Wisconsin Constitution contains substantially the same language. See State v. Scull, 2015 WI 22, ¶18 n.3, 361 Wis. 2d 288, 862 N.W.2d 562.

conduct——that the government would not profit from its lawless behavior, thus minimizing the risk of seriously undermining popular trust in government." See Herring v. United States, 555 U.S. 135, 152 (2009) (Ginsburg, J., dissenting) (quoting United States v. Calandra, 414 U.S. 338, 357 (1957) (Brennan, J., dissenting)); see also Robert M. Bloom & David H. Fentin, "A More Majestic Conception": The Importance of Judicial Integrity in Preserving the Exclusionary Rule, 13 U. Pa. J. Const. L. 47 (2010).

¶67 Eight years ago, Hess provided an instructive analysis of the judicial integrity consideration in applying the exclusionary rule. See Hess, 327 Wis. 2d 524, ¶¶63-67. "[J]udicial integrity is implicated when a judge issues a warrant that does not comply with statutory requirements and is not supported by the constitutionally required oath or affirmation." Id., ¶63. Further, "[t]he consideration of judicial integrity must take into account the nature of the defects in the warrant." Id., ¶66.

¶68 In Hess, a civil bench warrant issued for Hess's arrest because he failed to meet with the agent assigned to complete his pre-sentence investigation. Id., ¶8. The defects in Hess's warrant "were not technical irregularities or errors of judgment: The defendant's failure to cooperate with the agent in preparing a PSI was not a crime. It did not violate a court order, and it did not violate a condition of his bond." Id., ¶66.

4

¶69 Further we explained that "[t]he bench warrant civil that the court issued was void ab initio because it did not comply with any statute authorizing the court to issue a warrant. It was defective on its face because it was a civil warrant in a criminal case." Id. "In short, the warrant was void ab initio because it was unauthorized and defective in nearly every respect." Id. For this reason, we concluded that "[w]hen fundamental constitutional and statutory requirements for issuing a warrant are completely absent, the good-faith exception cannot save the resulting unconstitutionally obtained evidence." Id., ¶67.

¶70 This case turns on similar concerns. The Ashland County Circuit Court issued an arrest warrant for Kerr because he had not paid a forfeiture imposed for disorderly conduct. Majority op., ¶8. Wisconsin Stat. § 800.095 provides specific procedures for the filing of such a warrant. The Ashland County Circuit Court followed none of them, yet issued the warrant anyway.[2]

¶71 Accordingly, the Ashland County Circuit Court had no authority to issue the warrant. It was, like the warrant in Hess, "void ab initio because it was unauthorized and

---

[2] The concurrence latches onto an argument not advanced by either party, concluding that "neither the plain language of the applicable statutes nor the facts of record support the conclusion that the issuing court acted wrongfully." Concurrence, ¶56. Even the state concedes that "the arrest order here was void ab initio." Rather than engage an argument that was not briefed or argued, I determine that the State's concession is reasonable and conclude the warrant was void ab initio.

5

defective . . . ." See Hess, 327 Wis. 2d 524, ¶66. As in Hess, maintaining the integrity of the judicial process demands suppression of the evidence here.

¶72 The Bayfield County Circuit Court agreed in its ruling suppressing the evidence. In its thoughtful written decision, the circuit court stated: "There are obvious reasons why judicial integrity is a valid consideration. While there is no reason in this case to assume intentional malfeasance on the issuing court, the record from the Ashland County case shows an institutional or administrative disregard for the law governing civil commitments."

¶73 Using judicial integrity as the sole basis for the application of the exclusionary rule is admittedly only proper in "unusual circumstances." See Hess, 327 Wis. 2d 524, ¶64 (citing Leon, 468 U.S. at 921 n.22). The warrant here was issued without regard for the mandatory procedural safeguards of Wis. Stat. § 800.095. Such a situation presents the "unusual circumstances" necessary to suppress evidence based solely on the concern for judicial integrity.

¶74 For the foregoing reasons, I respectfully dissent.

¶75 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

6

¶76 REBECCA GRASSL BRADLEY, J. *(dissenting).* The majority applies federal Exclusionary Rule jurisprudence in this case despite the fact that the United States Supreme Court has never addressed whether that rule applies in the context of a void ab initio warrant. We have our own Constitution in the State of Wisconsin and it provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."[1] For nearly a century, this court deemed unauthorized warrants to be void ab initio and required any evidence recovered under such warrants to be suppressed, a rule this court reaffirmed just eight years ago.[2] Instead of applying long-standing Wisconsin law, the majority allows the admission of evidence obtained under a warrant with no basis in the law——a warrant the State concedes was void ab initio and which caused the unlawful arrest and search of a Wisconsin citizen. Notably, the invalid warrant for Christopher Kerr's arrest stemmed from an unpaid municipal citation for an ordinance violation——a civil, not a criminal offense.

---

[1] Wis. Const. art. I, § 11 (emphasis added).

[2] State v. Kriegbaum, 194 Wis. 229, 232, 215 N.W. 896 (1927); State v. Hess, 2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568.

1

¶77 Perhaps it is easy to acquiesce in the circuit court's infringement of constitutional rights when the defendant is found with an illegal drug in his pocket, but the majority's decision applies equally to the innocent citizens of Wisconsin who may be unlawfully arrested and searched under the guise of a warrant. An alarming example of the abuse of the judicial power to issue warrants occurred just five years ago when unelected "Reserve Judge [Barbara] Kluka authorized search warrants for the homes and offices of" citizens of Wisconsin, which "were executed . . . in pre-dawn, armed, paramilitary-style raids in which bright floodlights were used to illuminate the targets' homes." State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶28, 363 Wis. 2d 1, 866 N.W.2d 165. An unelected reserve judge issued these search warrants against "citizens who were wholly innocent of any wrongdoing" and despite the absence of probable cause that any crime had been committed. Id. at ¶¶34-35, 133.

¶78 Under the Wisconsin Constitution, statutes, and longstanding case law, the evidence in this case must be suppressed because it was obtained only as a result of an unlawful arrest warrant issued in violation of statutory procedures and Kerr's constitutional rights. A warrant issued in violation of Wis. Stat. § 800.095 is void ab initio, and any search or seizure pursuant to such a warrant violates Article I, Section 11 of the Wisconsin Constitution. I would affirm the circuit court's order suppressing the unlawfully obtained evidence.

¶79 Just two years ago, I cautioned against judicial approval of governmental intrusion into the home in violation of a citizen's constitutional guarantee to be free from unreasonable searches and seizures.[3] The infringement in this case is perhaps more alarming because it was accomplished by law enforcement's blameless execution of a warrant that the judge issued on his own initiative and with no legal basis whatsoever; rather, the warrant was issued in violation of procedural preconditions set forth in the Wisconsin Statutes. The majority minimizes the gravity of the judge's error by altogether ignoring it. But the danger of tolerating a breach of statutory procedures was powerfully explained by the United States Supreme Court over a century ago:

> [I]llegitimate and unconstitutional practices get their first footing . . . by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.

Boyd v. United States, 116 U.S. 616, 635 (1886). The majority strengthens the foothold of an illegitimate and unconstitutional judicial practice, disregards its duty to protect the constitutional rights of Wisconsin citizens, and permits a

---

[3] State v. Weber, 2016 WI 96, ¶141, 372 Wis. 2d 202, 887 N.W.2d 554 (R. Grassl Bradley, J. dissenting).

3

stealthy encroachment of the right to be free from unlawful searches and seizures. I respectfully dissent.

I

¶80 There is no dispute that the evidence discovered by police during the search of Kerr, incident to his arrest, was unlawfully obtained. Both parties agree that the warrant should not have issued because the circuit court failed to follow the statutory procedures required for issuing a valid warrant. The State argues that despite the statutory violation resulting in the unlawful search, the evidence is admissible because the Exclusionary Rule does not apply absent police misconduct, and everyone agrees the police did nothing wrong. I agree that suppression under the Exclusionary Rule is limited to instances of police misconduct and the court should not extend its application. See State v. Dearborn, 2010 WI 84, ¶44, 327 Wis. 2d 252, 786 N.W.2d 97. The police did not engage in any misconduct in this case; therefore, the Exclusionary Rule does not apply.

¶81 Nonetheless, the evidence must be suppressed under Wisconsin law because the warrant was void ab initio, making the search violative of Kerr's constitutional rights. Wisconsin case law requires suppression of evidence obtained under a

4

warrant that was void ab initio.[4] The purpose of this rule is not to provide a remedy for the citizen whose rights were violated; the harm attendant to an unlawful arrest and search is irreparable. Rather, suppression partially restores the status quo ante: but for the issuance of the unlawful warrant, no arrest would have been made, no search would have been conducted, and no evidence would have been discovered.

II

¶82 In its brief, the State explicitly concedes the warrant was void ab initio: "[T]he court that issued the arrest warrant had no authority to do so, rendering the warrant void ab initio." Additionally, the State notes:

> This arrest warrant, as it turns out, was void ab initio. A warrant is "void ab initio" when it was "[n]ull from the beginning, as from the first moment." Void, Black's Law Dictionary (10th ed. 2014) (including definition of "void ab initio"); see also [State v.]Hess, 2010 WI 82, ¶2 n.1.[[5]]

The State, citing Justice Annette Kingsland Ziegler's concurrence in State v. Hess,[6] as well as State v. Kriegbaum,[7]

---

[4] Relying on federal appellate court decisions, the State asserts that the Exclusionary Rule applies even when a warrant is void ab initio. The United States Supreme Court, however, has not subjected a void ab initio warrant to the exclusionary rule-good faith analysis. This court is "bound on the subject of federal law only by the pronouncements of the United States Supreme Court." State v. Webster, 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474 (1983). Wisconsin case law requires suppression and it is our state law we should apply.

[5] 2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568.

[6] Id., ¶¶71-73 (Ziegler, J. concurring).

[7] 194 Wis. at 232.

5

State v. Loney,[8] and State v. Grawien,[9] correctly explains: "A warrant can be void ab initio when the judge or magistrate lacked legal authority to issue any warrant, or when a mandatory condition precedent to the court's authority to issue a warrant was not met from the outset."

¶83 Neither party disputes that the circuit court failed to comply with the provisions of Wis. Stat. § 800.095(1)(b)2., and therefore lacked any authority to issue the warrant.[10] Wisconsin law prohibits imprisoning a defendant for failing to pay a fine imposed for a municipal ordinance violation unless the court finds, as pertinent here, that the defendant has the financial ability to pay the fine or failed to attend an indigency hearing to determine his ability to pay. Wis. Stat. § 800.095(1)(b)2. Accordingly, the warrant for Kerr's arrest was null from the beginning——it was void ab initio. As a result, Kerr's constitutional rights were violated and the evidence discovered should be suppressed.

---

[8] 110 Wis. 2d 256, 260, 328 N.W.2d 872 (Ct. App. 1982).

[9] 123 Wis. 2d 428, 430-31, 367 N.W.2d 816 (Ct. App. 1985).

[10] Wisconsin Stat. § 800.095 provides that "[n]o defendant may be imprisoned under [Wis. Stat. § 800.095(1) for failure to comply with certain court ordered requirements] unless the court makes one of [four] findings." These include finding that the defendant has the ability to pay the judgment within a reasonable time (subd. para. a.), has failed without good cause to perform required community service (subd. para. b.), has failed to attend an indigency hearing (subd. para. c), or has failed without good cause to complete certain drug or alcohol programs (subd. para. d).

6

¶84 Longstanding precedent——Kriegbaum, Loney, and Grawien——controls this case. In Kriegbaum, this court held that a warrant issued without authority violates Article I, Section 11 of the Wisconsin Constitution, which guarantees to the defendant immunity from unreasonable searches and seizures: "A search made pursuant to warrant issued by a justice of the peace to whom the legislature had not granted the power to issue such a warrant is an unreasonable search and in violation of the defendant's constitutional rights under this section of that fundamental law." 194 Wis. 229, 233, 215 N.W. 896 (1927).

¶85 The same principle applies in Kerr's case. The circuit court did not have authority under Wis. Stat. § 800.095 to issue the warrant because it did not make any of the four findings under subd. 2. Compliance with the statutory mandates is necessary to confer authority on the circuit court to issue the warrant.

¶86 The circuit court's failure to comply with the statutory procedures deprived it of any lawful authority to issue this warrant in the first place. The warrant's issuance rendered the search constitutionally unreasonable. This court in Kriegbaum, 194 Wis. at 233, concluded that the admission of the evidence obtained from an unlawful warrant violated Wisconsin's Constitution. This court should apply this precedent in Kerr's case and suppress the evidence.

¶87 Our court of appeals reached the same conclusion in Loney and Grawien. In Loney, the court of appeals held that evidence obtained as a result of an unlawfully issued warrant necessitated suppression of the evidence. 110 Wis. 2d 256, 259-

7

60, 328 N.W.2d 872 (Ct. App. 1982). Because the court commissioner who issued the warrant lacked the authority to do so, the circuit court should have granted the defendant's motion to suppress, and the court of appeals accordingly reversed Loney's conviction. Id. at 260. In Grawien, the court of appeals likewise held that when a warrant is issued by a court commissioner who had no authority to issue it, the evidence obtained under the unlawful warrant must be suppressed. 123 Wis. 2d 428, 431-33, 367 N.W.2d 816 (Ct. App. 1985).

¶88 In this case, the circuit court similarly lacked legal authority to issue the warrant because it did not make any of the findings mandated by Wis. Stat. § 800.095(1)(b)2. Any evidence discovered upon execution of a warrant void ab initio must be suppressed as a violation of Kerr's right to be free from unreasonable searches and seizures under the Wisconsin Constitution.[11] See also State v. Vickers, 964 P.2d 756, 762 (Mont. 1998) (holding that a void ab initio warrant requires suppression, and "the inquiry stops and all other issues pertaining to the validity of the search warrant, such as whether the purpose of the exclusionary rule is served, are moot"); People v. Carrera, 783 N.E.2d 15 (Ill. 2002); State v. Surowiecki, 440 A.2d 798, 799 (Conn. 1981) (suppressing evidence

---

[11] Case law also supports suppression as a sanction when statutes are violated. See, e.g., State v. Renard, 123 Wis. 2d 458, 461, 367 N.W.2d 237 (Ct. App. 1985) ("Suppression of the blood test is an appropriate sanction for failure to comply with [Wis. Stat. §] 343.305(5)"); see also State v. McCrossen, 129 Wis. 2d 277, 286-97, 385 N.W.2d 161 (1986) (discussing sanctions including suppression arising from due process violations).

obtained under void ab initio warrant because it was "fatally defective, invalid and void and conferred no authority to act thereunder") (quoted source omitted); State v. Nunez, 634 A.2d 1167, 1169 (R.I. 1993) (reversing conviction based on evidence obtained from void ab initio warrant); People v. Hentkowski, 397 N.W.2d 255 (Mich. Ct. App. 1986) (per curiam) (suppressing evidence obtained from void ab initio warrant); State v. Covert, 675 S.E.2d 740, 742-43 (S.C. 2009) (reversing conviction because evidence should have been suppressed where warrant was not signed; not reaching good faith exception because an unsigned warrant is "not a warrant" at all).

¶89 Justice Ziegler's distinction between void and defective warrants is unconvincing.[12] The warrant issued here is no different than the problematic warrants in Hess, Kriegbaum, Loney, and Grawien. The individual official issuing the warrant in each case lacked the statutory authority to do so. In Hess, just like this case, the circuit court judge lacked statutory authority to issue an arrest warrant. 327 Wis. 2d at 524, ¶23. The fact that judges generally possess authority to issue warrants does not authorize judges to issue warrants that

---

[12] There is a dearth of precedent distinguishing between warrants that are void ab initio and warrants that are simply defective on both the federal and state level. Justice Ziegler's concurrence in Hess is the only case identifying a notable difference between the two, but Justice Ziegler did not cite to any case law to support her proposition. See Hess, 327 Wis. 2d 524, ¶73 (Ziegler, J., concurring) ("While a per se void ab initio warrant is always defective, a defective warrant is not always per se void ab initio."). Justice Ziegler's concurrence in this case fares no better——it cites no cases supporting the distinction she makes here.

9

violate statutory law or constitutional rights. That the judge in Kerr's case would have had legal authority to issue the warrant if he had complied with the statutory requisites does not alter the nature of the constitutional violation. A void ab initio warrant is not a warrant at all——it is as if the warrant never existed; therefore, the analysis stops and the evidence should be suppressed. These cases are different from situations involving a warrant that was valid when issued, but a reviewing court later declared the warrant invalid. For example, a warrant may be valid upon issuance, but subsequently become invalid because a statute is declared unconstitutional, case law is overruled, the legislature changes the law, or a reviewing court decides the warrant was not supported by probable cause. In these examples, the law or the analysis of it changed. In Kerr's situation, the judge did not follow governing law, rendering the warrant void from the beginning.[13] The judge who issued Kerr's warrant lacked any legal authority to do so. Hess, Kriegbaum, Loney, and Grawien control under these facts. The evidence should be suppressed because it was obtained only as a result of an arrest warrant that was void ab initio and

---

[13] In her concurrence, Justice Ziegler attempts to vindicate the judge's issuance of the warrant for Kerr's arrest. The text itself categorically negates her statutory construction. Section 800.095(1)(b)2 unambiguously declares: "No defendant may be imprisoned under subd. 1 unless the court makes one of the following findings: . . . ." As pertinent in this case, these include finding that the defendant has the ability to pay the judgment within a reasonable time (subd. para. a.), and has failed to attend an indigency hearing (subd. para. c). It is uncontested that the requisite finding was not made; therefore, Kerr's arrest and imprisonment were unlawful.

10

therefore in violation of Kerr's right to be free from unreasonable searches and seizures under the Wisconsin Constitution.

¶90 The Fourth Amendment, the language of which the framers of the Wisconsin Constitution adopted verbatim, was designed to protect the people from the odious English practice of issuing writs of assistance empowering revenue officers to indiscriminately search homes. Boyd, 116 U.S. at 624-25. This practice was rightly described as "the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book." Id. at 625 (quoting Thomas M. Cooley, Constitutional Limitations 301-303 (1868)). If evidence seized under an unlawful warrant may be used against a person whose constitutional rights were violated by an unreasonable search and seizure, "declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution." Weeks v. United States, 232 U.S. 383, 393 (1914).[14] While allowing Kerr to circumvent punishment for illegal drug possession may be an unpalatable outcome for the majority, "[t]he efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have

---

[14] Mapp v. Ohio, 367 U.S. 643 (1961), extended the exclusionary rule established in Weeks v. United States, 232 U.S. 383, 393 (1914), to state criminal cases.

11

resulted in their embodiment in the fundamental law of the land."  <u>Id.</u>

¶91  I respectfully dissent.